**Bartlett J. HANFORD, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 04–504 L.**

United States Court of Federal Claims.

Nov. 23, 2004.

---

Bartlett J. Hanford, San Andreas, CA, pro se.

Kathleen Lennon, with whom was Thomas L. Sansonetti, Assistant Attorney General, Environment and Natural Resources Division, Department of Justice, Washington, DC, for defendant.

### OPINION & ORDER

HEWITT, Judge.

Before the court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot.) and Defendant's Motion to Dismiss (Def.'s Mot.). Plaintiff has moved for summary judgment on numerous theories of recovery for a 147–day delay in the issuance of a California permit to maintain an explosives magazine on his property. Defendant has moved to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, *see* Rules of the Court of Federal Claims (RCFC) 12(b)(6), and/or for lack of subject matter jurisdiction, *see* RCFC 12(b)(1). Because subject matter jurisdiction is a "threshold matter" that must be addressed before the court reaches the merits of plaintiff's claim, the court considers defendant's motion under RCFC 12(b)(1) first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998);

*see also Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1352 (Fed.Cir.2000).

For the following reasons, defendant's motion to dismiss is GRANTED and plaintiff's motion for summary judgment is rendered MOOT.

### I. Background

#### A. Plaintiff's Application for a Local Mining Permit [1]

Plaintiff Bartlett J. Hanford is a "mining engineer" who claims to have owned a "patented mining claim" in California for more than ten years. Complaint (Compl.) at i. In January 1999, plaintiff applied to the Calaveras County, California, Sheriff's Department for a permit to maintain an explosives magazine on his property. *Id.* at 1, 23; Def.'s Mot. at 2; *see also* Cal. Health & Safety Code § 12101(a)(3) (West 2003) ("No person shall [receive, store or possess explosives] without first having made application for and received a permit in accordance with this section."). California law required the Sheriff's Department to "inspect and approve the [explosives] storage facility" located on plaintiff's property before issuing a permit, to ensure the facility's "strict compliance with the regulations adopted by the State Fire Marshal." § 12105; *see also* § 12107 (granting the Sheriff "reasonable discretion" to "deny a permit to any person if it is his opinion that the handling or use of explosives by such person would be hazardous to property or dangerous to any person").

Because "[t]he preliminary information [in plaintiff's application] indicated that Mr. Hanford operated a mine," Compl. Ex. 9A (Letter from J. Davitt McAteer, Assistant Secretary, Mine Safety and Health Administration, to Hon. John T. Doolittle, U.S. House of Representatives of May 26, 1999 (McAteer Letter), at 1); Def.'s Mot. Ex. 1 (same), the Sheriff believed that plaintiff's property "might be subject to regulation by [the Mine Safety and Health Administration (MSHA) ]." *Id.* Accordingly, "[b]efore granting the permit, the sheriff's department

---

1. Facts cited to the filings of only one party do not appear to be disputed in connection with the pending motions.

wanted to be assured Mr. Hanford met Federal explosives storage requirements," and an MSHA inspector was "asked to accompany the sheriff's deputy when he went on site."[2] *Id.* The parties agree that "[t]he County Sheriff refused to grant [p]laintiff a permit unless he inspected the magazine with MSHA." Def.'s Mot. at 3.

Plaintiff's complaint indicates that the Sheriff sought to harm plaintiff by delaying and/or complicating the permitting process. Compl. at 24 ("I told Officer Ross [from the Sheriff's Department] . . . there would be no need for *MSHA.* Officer Ross stated: '*MSHA was coming to the mine whether I liked it or not*[.]'"); *see also id.* at 23 ("The inspection process . . . was cancelled three times [between January and February 1999] and [O]fficer Ross [from the sheriff's department] knew I needed my permit renewed because I was out of explosives."); *id.* at 25 ("Still no inspection of magazine by sheriff. Had my [a]ttorney [c]all Sheriff. Sheriff Downum did not return calls."); *id.* at 26 ("Hanford asked Officer Ross whether this was personal."); *id.* at 27 ("Officer Ross was upset because he could not get MSHA to act. He said he will be back [and] I construed [f]or the purpose of harming me. . . . Officer Ross [w]anted in the worst way to harm me."). Plaintiff further alleges that "MSHA . . . form[ed] an organized enterprise with the sheriff for the purpose of making the explosives permit contingent upon inspection of the mine." *Id.* at 8; *see also* Pl.'s Opp'n of Mot. to Dismiss (Pl.'s Opp'n) at 1 (accusing "Deputy Ross of the Sheriff's Department and Mr. Davis of MHSA" of conspiracy, racketeering and extortion).

Plaintiff disagreed with the Sheriff's determination that MSHA's involvement in the inspection was necessary, and plaintiff refused to allow an MSHA representative to visit or examine plaintiff's explosives storage facility. Plaintiff stated that "MSHA destroys small mines, because the cost of their regulation often exceeds the annual cost of operating the mine." Pl.'s Mot. at 11. Therefore, plaintiff sought "to protect [him]self from any jurisdiction MSHA may have." *Id.*

It appears that plaintiff believed that relocating his explosives magazine away from his mine would defeat MSHA's jurisdiction. Accordingly, plaintiff refused to cooperate with MSHA during a meeting and site visit on April 13, 1999:

> [On April 13, 1999,] [t]he MSHA supervisor and the Calaveras County deputy met with Mr. Hanford in the Sierra Nevada Mountains where Mr. Hanford had moved his explosives magazine, but not where he conducts his business. Mr. Hanford declined to discuss his activities with the supervisor and would not show him the [mining] work site.

McAteer Letter at 1; Compl. at 26–27 (describing plaintiff's relocation of his explosives magazine, the inspection of plaintiff's magazine, and plaintiff's refusal to discuss his mining activities). At the April 13, 1999 meeting, a sheriff's deputy inspected plaintiff's explosives magazine.[3] Compl. at 26 ("[Deputy] Ross said to make the improvements, photograph them, and submit them back for approval. If it appeared satisfactory[,] a permit would be issued.").

Plaintiff alleges that, at the April 13, 1999 meeting, "Willie Davis of MSHA made a jurisdictional statement claiming he had jurisdiction over all mines." *Id.* Plaintiff further alleges that, through this statement, Mr. Davis "violat[ed] the separation of powers doctrine, ma[de] a legal determination . . . [and] impersonat[ed] a judge[,] causing Plaintiff a deprivation of rights under the color of law." *Id.* at 9. However, plaintiff also admits that Mr. Davis clarified the limits of MSHA's jurisdiction by explaining that "if there were no mines [where plaintiff had moved his explosives magazine] . . . [t]he Sheriff could inspect the magazine," and MSHA would not have jurisdiction. *Id.* at 26.

---

**2.** MSHA, through a Memorandum of Understanding with the Bureau of Alcohol, Tobacco, and Firearms (ATF), has authority to inspect explosives magazines on mine properties on behalf of the ATF. *See* 45 Fed.Reg. 25,664–65 (Apr. 15, 1980).

**3.** It is not clear from plaintiff's complaint whether the MSHA inspector participated in the inspection of plaintiff's explosives magazine.

"MSHA [was neither] able to obtain a definitive description of Mr. Hanford's activities" nor permitted to inspect plaintiff's work site; therefore, MSHA could not "make a determination on [its] jurisdiction." McAteer Letter at 2. Because he could not "resolve whether MSHA ha[d] jurisdiction over [plaintiff's] activities," the MSHA official never inspected plaintiff's work site. *Id.*; Compl. at 26 ("Inspector Davis from MSHA asked consent to look around. I denied him that right. . . . Davis said he would decline forcible entry at [t]his time."); *id.* Ex. 9B (Letter from Earnest C. Teaster, Jr., Administrator for Metal and Nonmetal Mine Safety and Health, MSHA, to plaintiff of Aug. 25, 1999) ("[B]ased on our unsuccessful attempts to locate your place of business and your reluctance to discuss your activities, we cannot determine whether or not we have jurisdiction. I urge you to contact MSHA's Western District office with more information concerning your operation so that we can make a determination whether MSHA has jurisdiction.").

"Although required to do so, Plaintiff has never notified MSHA that he was engaged in mining activities." Def.'s Mot. at 4 (citing Notification of Commencement of Operations and Closing of Mines, 30 C.F.R § 57.1000 (1995)). Despite the unresolved state of his relations with MSHA, plaintiff nevertheless received his local explosives permit on April 21, 1999—147 days after he applied for the permit, and eight days after the sheriff's deputy inspected the explosives magazine. *See* Compl. at 27.

### B. Plaintiff's Federal Tort Claims Act (FTCA) and District Court Claims

On June 8, 2000, plaintiff filed an FTCA administrative claim form (SF–95) seeking $2,454,121 in damages from MSHA. Compl. Ex. 22; Def.'s Mot. Ex. 2. As a basis for his claim, plaintiff alleged that the MSHA agent fraudulently "claimed jurisdiction over [plaintiff's] patented mining claim . . . when no such jurisdiction or venue existed," Compl. Ex. 22, at 1, and that the MSHA agent "caused a taking of private property in[ ] conspiracy with [the] local Sheriff denying Hanford the right for a liv[e]lihood, a mining

right, and inalienable rights protected by the Federal Constitution[,] resulting in the loss of production." *Id.; cf.* Compl. Ex. 23 (Letter from plaintiff to Paula V. Parrott, Paralegal Specialist, U.S. Dep't of Labor, of April 17, 2000), at 1 ("The [U]nited States is actionable because they had no authority for interfer[ing] with [plaintiff's mining] operation and tried to gain jurisdiction through the sheriff. When the sheriff had the power."). Plaintiff's claim was denied by the Department of Labor on August 16, 2001. Def.'s Mot. at 5.

In February 2001, plaintiff filed a complaint "alleging claims similar to [his] FTCA claim" in the United States District Court for the District of Columbia. *Id.* Plaintiff's district court complaint was dismissed for lack of jurisdiction, Compl. App. A (District Ct. Op. and Order), and his subsequent appeal to the United States Court of Appeals for the District of Columbia Circuit was dismissed as untimely. *Id.* App. B.

### C. Plaintiff's "Administrative Judgment"

While his FTCA claim was pending, plaintiff recorded a document titled "Administrative Judgment" with the Recorder's Office in Washington County, Utah. *See* Compl. Ex. 19; Def.'s Mot. Ex. 3. Although this document was recorded in Utah on November 30, 2000, Compl. Ex. 19 at 2, it appears to have been signed in California on November 9, 2000. *Id.* at 6. Plaintiff alleges that the "Administrative Judgment" was "rendered by a court of competent jurisdiction," Pl.'s Mot. at 6, but the face of the document does not identify a court or administrative tribunal. Rather, the document was signed by an "Administrative Hearing Officer" in Calaveras County, California. Compl. Ex. 19. at 6. The "Administrative Judgment" finds MSHA liable to plaintiff for $2,454,121 in damages stemming from its agent's conduct during the inspection of plaintiff's explosives magazine. *Id.*

Plaintiff's "Administrative Judgment" consists of a document styled as a "Verified Declaration . . . [made] under the penalty of perjury pursuant to the law . . . of California" by Darrell H. Brandon. *Id.* at 2. Mr. Brandon's declaration is divided into three

sections: (1) "Finding[s] of Fact," *id.* at 2–3; (2) "Conclusion[s] of Law," *id.* at 3–4; and (3) "Admitted Answers to Inquir[i]es," *id.* at 4–6, in which Mr. Brandon appears to consent to suit, and to admit culpability, on behalf of MSHA. In addition to serving as a declarant in this matter, Mr. Brandon also appears in the "Administrative Judgment" as the "Administrative Hearing Officer" who entered judgment against MSHA. *Id.* Defendant states that it "is unaware of the identi[t]y of Darrell Brandon." Def.'s Mot. at 6 n. 5.

Plaintiff claims that the "Administrative Judgment" was rendered by a "third party judging the actions of MSHA." Compl. at 19–20. The court notes, however, that several statements in Mr. Brandon's declaration appear to have been authored by plaintiff, rather than a third party. *See, e.g.,* Compl. Ex. 19 at 1, ¶ 1 ("The [MSHA] employees … were put on notice … [that] if *they [m]oved forward against me, Hanford,* without resolving an issue of law, they would be committing felonies ….") (emphasis added); *id.* at 1, ¶ 2 ("Upon service[,] each of the above [MSHA] employees had Title 42 U.S.C. [§ ]1986 knowledge of violations and *thr[ough] their agent Davis moved forward against me* without resolution of an issue of law.") (emphasis added); *id.* at 1, ¶ 4 ("On April 13, 1999 *MSHA moved forward against me, Hanford[,] thr[ough] their agent Mr. Davis* and became culpable for loss of liberty, livlihood and mining right, confirming the takings issue, ignoring the issue of law[,] committing felonies, impersonating a judge, deprivation of rights under the color of law, and conspiracy….") (emphasis added).

Defendant, not without cause, views the "Administrative Judgment" as a fabrication. Def.'s Mot. at 6 ("Plaintiff went so far as to draft what he calls an 'Administrative Judgment.' The 'Administrative Judgment' is an act of fiction …. [I]t is not a legal judgment."). The record indicates that defendant neither participated in nor responded to any proceeding resulting in plaintiff's "Administrative Judgment." *See* Pl.'s Opp'n at 8, ¶ 76. Plaintiff argues that defendant's lack of participation is evidence of defendant's assent to the terms of the "Administrative Judgment." *Id.* at 7–8, ¶¶ 76–77 (noting that "MSHA silently agreed with Plaintiff's position" and "refused to controvert the claim for damage[s]"). According to plaintiff, because defendant "[a]greed not to litigate further," Pl.'s Mot. at 5, the "Administrative Judgment" became "a final judgment rendered by a court of competent jurisdiction on the merits … conclusive as to the rights of the parties and their privies," *id.* at 6, and that it "constitutes an absolute bar to a subsequent action," through the doctrines of *res judicata* and collateral estoppel. *Id.*

### D. Plaintiff's Complaint in the United States Court of Federal Claims

Plaintiff filed his complaint in this court on March 29, 2004, alleging that MSHA acted in concert with the Calaveras County Sheriff's Department to violate plaintiff's rights under, *inter alia,* the (1) the Due Process Clause of the Fifth Amendment, Compl. at 12–13; *see also id.* at 2 (accusing MSHA of "engaging with the Sheriff to detain [him] of explosives, liberty, property and mining right essential to the operation of [his business]"); (2) the Takings Clause of the Fifth Amendment, *id.* at 14–15; *see also id.* at 27 ("I … had to pursue other opportunities for 147 days … causing a regulatory taking[ ]."); (3) the Fourth Amendment, *id* at 15–16; and (4) the "Supremacy Clause," U.S. Const. Art. VI. *See* Compl. at 17–18.

In his complaint, plaintiff also argues that MSHA is bound by the "Administrative Judgment" described above, *see* Part I.C., *supra,* and alleges that the "administrative judgment was his summary judgment and became law as a matter of public policy by being entered into the court record for over 30 days." Compl. at 2. According to plaintiff, by "defendant(s) silently agreeing [with his Administrative Judgment] and by failing to litigate further[,] Plaintiff had judgment [by] estoppel in the administrative process." *Id.; see also id.* at 18–20 (discussing plaintiff's claim for "Judgment by Estoppel"); Pl.'s Mot. at 6 (arguing that the doctrines of *res judicata* and collateral estoppel apply and entitle plaintiff to recovery). Plaintiff asks that "judgment be awarded … in favor of Plaintiff … in the amount of $2,454,121 plus

court cost[s] and interest [at a rate of] 12% per annum until paid." Compl. at 22, ¶ 3.

## II. Discussion

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1. Standard of Review

Rule 12(b)(1) of the Rules of the United States Court of Federal Claims governs dismissal of a claim for lack of subject matter jurisdiction. RCFC 12(b)(1). In ruling on a Rule 12(b)(1) motion to dismiss, the court is generally "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). However, plaintiff, as the non-moving party, bears the burden of establishing jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction was put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

#### 2. Jurisdiction of the United States Court of Federal Claims

■ The United States Court of Federal Claims is a court of "limited jurisdiction." *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). The Tucker Act, 28 U.S.C. § 1491 (2000), confers upon this court jurisdiction over certain claims against the United States; however, the Tucker Act does not create a substantive right enforceable against the sovereign. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Khan v. United States*, 201 F.3d 1375, 1377 (Fed.Cir.2000). Rather, a claimant must base his claim "either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliq-

uidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see also Fisher v. United States*, 364 F.3d 1372, 1377 (Fed.Cir.2004) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver [of the Government's sovereign immunity] of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.").

■ The general rule is that this court has jurisdiction over a case if a claimant makes a non-frivolous allegation that he is "entitled to money from the United States because a statute or regulation grants him that right," or because a contract or constitutional provision creates an equivalent right. *Ralston Steel Corp. v. United States*, 169 Ct.Cl. 119, 340 F.2d 663, 667 (1965); *see also Stephenson v. United States*, 58 Fed.Cl. 186, 192 (2003) ("[W]e are not empowered by Congress to recognize '*every* claim [against the United States] involving or invoking the Constitution, a federal statute, or a regulation.' Rather, [we] may only hear claims seeking primarily *monetary relief* against the United States government based upon 'money-mandating' provisions of the Constitution, acts of Congress, or executive regulations, to which the plaintiff alleges a specific entitlement." (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967) (emphasis added) (footnote and citations omitted))).

The court "may not entertain claims outside this specific jurisdictional authority." *Adams v. United States*, 20 Cl.Ct. 132, 135 (1990). "If there is no jurisdiction, this court must dismiss the action." *Taylor v. United States*, 49 Fed.Cl. 598, 601 (2001). The court addresses each of plaintiff's claims in turn.

#### 3. Analysis of Plaintiff's Constitutional Claims [4]

■ In his complaint, plaintiff first alleges that "MSHA's participation in an orga-

---

4. The court notes that plaintiff's complaint also includes non-constitutional allegations, and accuses the MSHA inspector of extortion, Compl. at ii; conspiracy, *id.* at 10; impersonating a

judge, *id.* at 10–11; violating plaintiff's civil rights under 42 U.S.C. § 1986 (2000); and slavery, Admin. J. at 5. None of these claims arises pursuant to a money-mandating statute; there-

nized enterprise with the sheriff ... deni[ed] a mining right for 147 days for lack of notice, discovery and hearing or due process of law." Compl. at 13, ¶ 35. Plaintiff further alleges that "MSHA ... detain[ed] Plaintiff of his liberty, mining, property and livelihood rights and by default violated Plaintiff's due process of law." [5] *Id.* at 13, ¶ 40. Both claims appear to allege a denial of plaintiff's rights under the Due Process Clause of the Fifth Amendment, and both claims must fail. "[This] court [does] not have jurisdiction over money claims that are based upon an alleged violation by the government of the due process clause ... because the due process clause does not obligate the government to pay money damages." *Collins v. United States,* 67 F.3d 284, 288 (Fed.Cir.1995); *see also Sumter v. United States,* 61 Fed.Cl. 517, 524 (2004) ("[T]his court is not vested with jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to hear [Fifth Amendment due process] claims. The Fifth Amendment, standing alone, without an underlying statutory or regulatory right to recover money damages, does not provide the necessary independent basis for jurisdiction in this court.").

 Nor does the court have jurisdiction over plaintiff's Fourth Amendment and Supremacy Clause claims. *See* Compl. at 15–18. "[V]iolations of 4th [A]mendment search and seizure" are "excluded" from the jurisdiction of this court because the Fourth Amendment is not a money-mandating constitutional provision. *Stephenson,* 58 Fed.Cl. at 192. The court further notes that plaintiff's "Supremacy Clause" claim is more aptly characterized as a repackaging of his due process and Fourth Amendment claims. *See* Compl. at 18 ¶ 66 ("I have seen nothing or has any material fact been presented which demonstrates that the participation of MSHA without a [F]ourth [A]mendment warrant or

fore, the court lacks jurisdiction over these claims. Plaintiff's claims of false imprisonment and false arrest, Compl. at 6, sound in tort and also lie outside this court's jurisdiction.

5. Plaintiff also argues that MSHA's failure to respond to plaintiff's Administrative Judgment violated plaintiff's rights under the Sixth Amendment of the Constitution. Compl. at 13, ¶ 39. This claim, too, must fail for two reasons. First, the Sixth Amendment protects "the accused" and applies "[i]n all criminal prosecutions."

due process of law detaining plaintiff[ ] of his fundamental liberties and property was not an obstacle or a violation of the Supremacy Clause."). Accordingly, and for the reasons stated above, the court lacks jurisdiction over plaintiff's Supremacy Clause claim.

The court now turns to plaintiff's takings claim. Plaintiff alleges that MSHA and the local sheriff delayed plaintiff's explosives permit for 147 days by "making ... [the] explosive permit contingent upon [MSHA's] inspection of the mine." Compl. at 14, ¶ 47. Plaintiff further alleges that this delay harmed his mining business, *see id.* at 14, ¶ 46 ("I was ... injured by MSHA detaining me of liberty for lack of explosives needed to operate the exploration having reached a depth of 200 vertical feet, suffering a loss of investment backed expectations and the uncertainty that I would be allowed to return to work, being displaced and forced to seek a new drilling project."), and that this harm amounts to a compensable temporary taking, *id.* at 13, ¶ 35 (alleging that MSHA's "participation in the denial of a mining right for 147 days ... took Plaintiff's property/mining right.").

 As the United States Court of Appeals for the Federal Circuit recently noted, the test for determining whether a claim falls within this court's subject matter jurisdiction is fairly "relaxed":

[W]hen a Tucker Act plaintiff makes a non-frivolous allegation that a particular statute is reasonably amenable, with fair inferences drawn, to a reading that it mandates money damages, a basis for jurisdiction is stated.... If the showing meets the test, nothing more need be done to establish the trial court's jurisdiction.

U.S. Const. amend. VI. Plaintiff has not been accused of a crime, nor is this a criminal proceeding. Second, this court lacks jurisdiction over claims arising under the Sixth Amendment. *See Milas v. United States,* 42 Fed.Cl. 704, 710 (1999) ("[T]he Fifth and Sixth Amendments are not money mandating and, consequently, cannot combine with the Tucker Act to provide the court jurisdiction."), *aff'd,* 217 F.3d 854 (Fed.Cir. 1999).

*Fisher,* 364 F.3d 1372 at 1377–78. Here, it is well-established that " 'a plaintiff may sue in the Court of Federal Claims on a takings claim.' " *El–Shifa Pharm. Indus. Co. v. United States,* 378 F.3d 1346, 1353 (Fed.Cir. 2004) (quoting *Del–Rio Drilling Programs, Inc. v. United States,* 146 F.3d 1358, 1363 (Fed.Cir.1998)); *see also* 28 U.S.C. § 1491 (2000); *Testan,* 424 U.S. at 398, 96 S.Ct. 948. This rule extends to both permanent and temporary takings. *See BMR Gold Corp. v. United States,* 41 Fed.Cl. 277, 282 (1998) ("[I]f the interference, even if temporary, with plaintiff's property rights is substantial enough, it may rise to the level of a taking.").

██ Notwithstanding *Fisher's* "relaxed" test for subject matter jurisdiction, it is far from clear that plaintiff has filed a "well-pleaded, non-frivolous complaint" alleging a violation of the Takings Clause. *Fisher,* 364 F.3d at 1378. However, the court recognizes that allegations made in a *pro se* complaint are to be held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and therefore finds that it has jurisdiction over plaintiff's Takings Clause claim.

### B. Motion to Dismiss for Failure to State a Claim

Although plaintiff has alleged a taking that falls within the court's jurisdiction, the court's inquiry does not end here. "[T]he question of a federal court's subject matter jurisdiction over a cause [is separate] from the question of what a plaintiff must prove in order to prevail in the cause." *Fisher,* 364 F.3d at 1376. With this in mind, the court now considers whether plaintiff's allegations of a temporary taking—"the denial of a mining right for 147 days," Compl. at 13, ¶ 35—"state a claim upon which relief can be granted." RCFC 12(b)(6).

### 1. Standard of Review

Under Rule 12(b)(6), the court must accept as true the facts alleged in the complaint, *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and must construe all reasonable inferences in favor of the non-movant, *Som-*

*mers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir.2001). A court must grant the motion "when the facts asserted by the plaintiff do not entitle him to a remedy." *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir. 2000). "Dismissal by this court under [Rule 12(b)(6) ] constitutes an adjudication on the merits of a claim." *Crawford v. United States,* 53 Fed.Cl. 191, 192 (2002). The court now considers whether the facts alleged in plaintiff's complaint state a valid and compensable temporary takings claim.

### 2. Analysis of Plaintiff's Takings Claim

In this case, plaintiff's complaint alleges the following facts: (1) plaintiff applied for a local explosives permit; (2) the Sheriff refused to issue that permit unless an MSHA inspector accompanied him to plaintiff's work site, see Cal. Health & Safety Code § 12101(c)(2) (permitting the Sheriff to make such a request); (3) an MSHA inspector accompanied the Sheriff to the site; (4) the MSHA inspector commented that MSHA "ha[s] jurisdiction over all mines," Compl. at 26, but did not enter or inspect plaintiff's mine; and (5) plaintiff's local permit was issued 147 days after his initial application. Plaintiff claims that these facts establish a temporary taking by MSHA. The court disagrees. After careful examination of plaintiff's complaint, and drawing all reasonable inferences in plaintiff's favor, the court determines that plaintiff has failed to state a valid takings claim and, therefore, that the remainder of his complaint must be dismissed.

██ It is well established that the federal government cannot be held liable for actions by state or local government officials that allegedly result in a taking. See *Shewfelt v. United States,* 104 F.3d 1333, 1338 (Fed.Cir.1997) ("[I]t was California and not the United States that took the action that resulted in the extinguishment of any interest that [plaintiff] may have had .... If [plaintiff] has any valid taking claim resulting from the extinguishment, it would be against California, and not against the United States."). Only where "the government involvement in the deprivation of private property is sufficiently direct and substantial" does a compensable taking occur. *Nat'l Bd.*

*of YMCAs v. United States,* 395 U.S. 85, 93, 89 S.Ct. 1511, 23 L.Ed.2d 117 (1969).

██ Here, plaintiff alleges that an MSHA inspector delayed the issuance of plaintiff's explosives permit and caused plaintiff's property to be taken for 147 days. See Compl. at 15, ¶ 49; Pl.'s Opp'n at 6, ¶ 49. However, the well-pleaded allegations in plaintiff's complaint indicate that the local Sheriff, rather than a federal actor, caused the delay. As plaintiff notes repeatedly, the local Sheriff refused to inspect plaintiff's explosives storage facility unless an MSHA official accompanied him to the site. Compl. at 24, ¶ 8 ("Officer Ross stated: 'MSHA was coming to the mine whether I liked it or not[.]' "); *id.* at 25, ¶ 16 ("[I][a]sked about getting a Federal explosive license because the Sheriff would not inspect my magazine."); *id.* at 27 ("Officer Ross was upset because he could not get MSHA to act. He said he will be back … [f]or the purpose of harming me."); see also McAteer Letter at 1 ("Before granting the permit, the sheriff's department wanted to be assured Mr. Hanford met Federal explosives storage requirements … [and MSHA was] asked to accompany the sheriff's deputy when he went on site.").

Plaintiff's complaint also makes clear that the MSHA inspector never entered or inspected plaintiff's mine. See Compl. at 26 ("Inspector Davis from MSHA asked consent to look around. I denied him that right. I did not [c]onsent to any right for MSHA to look around. Davis said he would decline forcible entry at [t]his time."); see also McAteer Letter at 1 ("Mr. Hanford declined to discuss his activities with the [MSHA] supervisor and would not show him the work site."). And plaintiff's complaint accuses the Sheriff of causing the delays in the permitting process. See Compl. at 6 (noting that the Sheriff "broke local state law by not issuing the permit within 14 days as required under [California law]"); *id.* at 27 (accusing the Sheriff of negligence under California law, and of "making a ruse that he needed MSHA to inspect the magazine"). It is far from clear whether the facts alleged in plaintiff's complaint establish that MSHA had any role in the delayed issuance of plaintiff's local explosives permit—let alone the "sufficiently direct and substantial" role necessary to establish a taking under the Fifth Amendment. *Nat'l Bd. of YMCAs,* 395 U.S. at 93, 89 S.Ct. 1511.

Even if the 147–day delay in the issuance of plaintiff's permit could somehow be attributable to MSHA, a 147–day delay is insufficient as a matter of law to constitute a temporary taking. "Delay in the regulatory process cannot give rise to takings liability unless the delay is extraordinary." *Appolo Fuels, Inc. v. United States,* 381 F.3d 1338, 1351 (Fed.Cir.2004) (citing *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1352 (Fed.Cir.2002) ("[A]bsent [the permanent] denial of a permit, only extraordinary delays in the permitting process ripen into a compensable taking.")); see also *Seiber v. United States,* 364 F.3d 1356, 1364 (Fed.Cir.2004) ("[A] temporary 'taking may occur by reason of extraordinary delay in [the] governmental decision making' process.") (citing *Wyatt v. United States,* 271 F.3d 1090, 1098 (Fed.Cir. 2001) (quoting *Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 803 (Fed.Cir.1993))). The term "extraordinary," as construed by the courts, clearly excludes plaintiff's delay claim. For example, the Federal Circuit has held that "[an] eighteen month delay is far short of extraordinary," *Appolo Fuels,* 381 F.3d at 1351, and has rejected a claim that a ten-year delay in the issuance of a surface mining permit constituted a temporary taking. *Wyatt,* 271 F.3d at 1097–1100; cf. *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (refusing to hold that a 32–month federal ban on private land development constituted a temporary taking). In light of this precedent, a 147–day delay in the issuance of a permit, as alleged by plaintiff here, cannot constitute a compensable temporary taking.

### C. Plaintiff's Claim for "Judgment by Estoppel"

In his complaint, plaintiff asks the court to grant the relief set forth in his "Administrative Judgment," discussed in Part I.C., *supra.* Plaintiff alleges that because MSHA "neglect[ed] to controvert, rebut, or answer Plaintiff's Administrative Judgment/Sum-

mary Judgment[,] D[O]L/MSHA agreed not to litigate further[;] ... [therefore, plaintiff is entitled to] judgment by estoppel." Compl. at 20, ¶ 81. The court disagrees with plaintiff's conclusion.

As an initial matter, there is substantial doubt about the authenticity of plaintiff's "Administrative Judgment." *See* Part I.C., *supra.* The court notes the odd circumstance that plaintiff's claim allegedly was decided in California, yet the "Administrative Judgment" was recorded in Utah. The "Administrative Judgment" does not identify the tribunal, administrative or otherwise, that ruled in the matter. The sole witness/declarant whom plaintiff relied on to state his claim also served as "judge" in the matter. That same sole witness/declarant/"judge" sometimes writes in the first person voice of plaintiff.

■ Even assuming that plaintiff's "Administrative Judgment" had been rendered in a California court or administrative tribunal, the judgment would have no legal effect. The United States "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (citations omitted); *see also McElrath v. United States,* 102 U.S. 426, 440, 16 Ct.Cl. 630, 26 L.Ed. 189 (1880) ("[The Government] can declare in what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits."). Further, "[t]he Federal Government's consent to suit against itself, without more, in a field of federal power does not authorize a suit in a state court." *Great N. Life Ins. Co. v. Read,* 322 U.S. 47, 54, n. 6, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *see also West v. Gibson* 527 U.S. 212, 226, 119 S.Ct. 1906, 144 L.Ed.2d 196 (1999) ("It is settled law that a waiver of sovereign immunity in one forum does not effect a waiver in other forums."). And the United States' consent to be sued must be "unequivocally expressed" in a statute; consent may not be inferred from the United States' silence. *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *see also Lehman v. Nakshian,*

453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."). In this case, plaintiff has failed to establish that defendant has expressly consented to be sued in plaintiff's state administrative tribunal; accordingly, plaintiff's "Administrative Judgment" is without effect and his claim for "judgment by estoppel" must fail.

### III. Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED, and plaintiff's motion for summary judgment is rendered MOOT. The Clerk of the Court shall DISMISS plaintiff's complaint as to his claim for a Fifth Amendment taking with prejudice, shall DISMISS the balance of plaintiff's complaint without prejudice, and shall ENTER JUDGMENT for defendant. No costs.

IT IS SO ORDERED.