[Cite as *State ex rel. Sahbra Farms, Inc. v. Streetsboro*, 2024-Ohio-2506.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO ex rel. SAHBRA FARMS, INC., | CASE NO. 2023-P-0062 |
| Relator-Appellant, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| CITY OF STREETSBORO, OHIO, et al., | Trial Court No. 2020 CV 00501 |
| Respondents-Appellees. | |

**O P I N I O N**

Decided: June 28, 2024
Judgment: Reversed and remanded

*Robert J. Dubyak* and *Christina C. Spallina*, Dubyak Nelson, LLC, 6105 Parkland Boulevard, Suite 230, Mayfield Heights, OH 44124 (For Relator-Appellant).

*Margaret G. Beck*, Brady, Coyle & Schmidt, Ltd., 4052 Holland Sylvania Road, Toledo, OH 43623 and *Franklin Beni*, City of Streetsboro Law Director, 9184 State Route 43, Streetsboro, OH 44241 (For Respondents-Appellees).

MARY JANE TRAPP, J.

{¶1} Relator-appellant, Sahbra Farms, Inc. ("Sahbra"), appeals the judgment of the Portage County Court of Common Pleas adopting the magistrate's decision and denying its petition for a writ of mandamus against respondents-appellees, City of Streetsboro, Ohio, and City of Streetsboro Planning and Zoning Commission (collectively, "Streetsboro").

{¶2} Sahbra contended that Streetsboro's denial of a conditional use permit for surface mining constituted a regulatory taking of Sahbra's property that entitled it to

compensation. Sahbra raises two assignments of error on appeal, contending the trial court erred by determining it lacked standing to pursue a regulatory takings claim and by failing to determine whether Sahbra's property was totally, partially, or temporarily taken.

{¶3} After a careful review of the record and pertinent law, we find that Sahbra's assignments of error have merit. The trial court erred as a matter of law by failing to cite and apply the governing precedent regarding the property interests created by a mineral lease. Thus, the trial court's judgment is reversed, and this matter is remanded for the trial court to determine Sahbra's property interests and whether Streetsboro's denial of the conditional use permit constituted a total, partial, and/or temporary taking of any of Sahbra's property interests.

### Substantive and Procedural History

{¶4} Sahbra owns approximately 225 acres of real property located on State Route 14 in Streetsboro, Ohio, known as Sahbra Farms. The property is zoned "R-R, Rural Residential District." Sahbra's activities on the property have included the leasing of barns, stalls, and a training facility for horse farm operations; the leasing of apartments and office space; and the leasing of land for agricultural farming and oil and gas wells.

{¶5} In 2015, Sahbra entered into a mineral lease with non-party Shelly Materials, LLC ("Shelly"), that authorized Shelly to mine and extract sand and gravel from the property in exchange for certain payments to Sahbra. At the time, surface mining was a permitted conditional use in the R-R District. In 2016, Shelly filed an application with Streetsboro for a conditional use permit. Streetsboro subsequently passed an ordinance amending the zoning code to remove surface mining as a conditional use; however, the

2

parties agreed the amendment could not be applied retroactively to Shelly. Streetsboro held three public hearings and ultimately denied Shelly's application.

{¶6} Shelly filed an administrative appeal in the trial court, which reversed Streetsboro's denial. On appeal to this court, we reversed the trial court's decision and reinstated Streetsboro's denial. *See Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.*, 2017-Ohio-9342, ¶ 40 (11th Dist.). Shelly appealed to the Supreme Court of Ohio, which reversed this court's decision and remanded for resolution of the other issues raised in the appeal. *See Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.*, 2019-Ohio-4499, ¶ 25.

{¶7} In 2020, while the appeal remained pending in this court, Sahbra filed a petition for a writ of mandamus against Streetsboro in the trial court. Sahbra alleged that its property has no economically beneficial use as presently zoned without the issuance of a conditional zoning certificate for surface mining and that Streetsboro's denial of Shelly's application constituted a regulatory taking for which compensation must be paid. Sahbra sought a writ of mandamus ordering Streetsboro to initiate appropriation proceedings.

{¶8} Streetsboro filed a Civ.R. 12(B)(6) motion to dismiss Sahbra's petition, which Sahbra opposed, and which the trial court denied. Streetsboro filed an answer denying Sahbra's allegations, and the parties engaged in discovery.

{¶9} Meanwhile, Shelly and Streetsboro settled their dispute and voluntarily dismissed the pending appeal. Mining operations on Sahbra Farms began in October 2021.

Case No. 2023-P-0062

{¶10} Streetsboro filed a Civ.R. 56 motion for summary judgment on Sahbra's takings claim, which Sahbra opposed. The trial court denied Streetsboro's motion, stating "a factual inquiry remains whether the actions of Streetsboro are considered a total taking, a partial taking, or a temporary taking which would entitle Sahbra to damages/compensation."

{¶11} The matter was tried to the magistrate over two days. Sahbra presented testimony from David Gross, its sole owner; James Huber, a real estate appraiser; Debra Cross, a long-time employee; and Dave Tantlinger, a forensic accountant. Mr. Huber opined, to a reasonable degree of professional certainty, that Streetsboro's denial of Shelly's conditional use zoning permit deprived Sahbra from receiving economically beneficial use of the property for the 51-month period from September 2016 through November 2020. Mr. Tantlinger testified that Streetsboro's denial of the conditional use permit caused Sahbra to incur losses in excess of $2.2 million, consisting of delayed payments under the mineral lease; interest expenses for additional borrowing; lost sales of limestone; bankruptcy fees; and additional interest expenses on its existing mortgage. The parties submitted joint exhibits, and Sahbra submitted several of its own exhibits.

{¶12} Streetsboro presented testimony from Roger Sours, a real estate appraiser. Mr. Sours opined, to a reasonable degree of professional certainty, that Sahbra's property was capable of economically viable uses between September 2016 and November 2020, particularly hay farming and residential development. Streetsboro also submitted several of its own exhibits.

{¶13} The magistrate filed a decision recommending that the trial court deny Sahbra's petition because Sahbra lacked standing to challenge Streetsboro's denial of

4

Shelly's conditional use permit and because Sahbra lacked a cognizable property interest due to the mineral lease with Shelly. The next day, the trial court filed a judgment entry adopting the magistrate's decision in its entirety and denying Sahbra's petition. The trial court determined that Sahbra "does not possess a cognizable property interest, and therefore does not have standing to bring a takings claim."

{¶14} Sahbra filed objections to the magistrate's decision and a notice of appeal in this court. We remanded for the trial court to rule on Sahbra's objections. The trial court filed a judgment entry denying Sahbra's objections.

{¶15} Sahbra raises the following two assignments of error:

{¶16} "[1.] The Trial Court erred when it held that Sahbra Farms lacked standing to pursue its takings claim because Sahbra Farms' property rights were vertically severed by entering into the Mineral Lease with Shelly, leaving Sahbra Farms only with property interests akin to those of an adjacent parcel.

{¶17} "[2.] The Trial Court erred when it held that Sahbra Farms lacked standing and by failing to perform an analysis to determine whether Sahbra Farms' Property was totally, partially, or temporarily taken by the City's denial of the conditional use permit."

### Standard of Review

{¶18} We review Sahbra's assignments of error together for ease of discussion.

{¶19} "When reviewing an appeal from a trial court's adoption of a magistrate's decision, an appellate court must determine whether the trial court abused its discretion in adopting the decision." *Huntington Natl. Bank v. Betteley*, 2015-Ohio-5067, ¶ 17 (11th Dist.). An abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting

5

*Black's Law Dictionary* (8th Ed. 2004). "When a pure issue of law is involved in appellate review, the mere fact that the reviewing court would decide the issue differently is enough to find error. . . . By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.* at ¶ 67.

**Mandamus**

{¶20} "Mandamus is the appropriate action to compel public authorities to commence appropriation cases when an involuntary taking of private property is alleged." *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.*, 2007-Ohio-5022, ¶ 15. To be entitled to a writ of mandamus, Sahbra was required to establish, by clear and convincing evidence, (1) a clear legal right to compel Streetsboro to commence property-appropriation proceedings, (2) a clear legal duty on the part of Streetsboro to institute that action, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. New Wen, Inc. v. Marchbanks*, 2020-Ohio-63, ¶ 15.

**Regulatory Takings**

{¶21} Sahbra contends that Streetsboro subjected it to a total, partial, or temporary regulatory taking of its property.

{¶22} "Often referred to as the Just Compensation Clause, the final clause of the Fifth Amendment to the United States Constitution provides: 'nor shall private property be taken for public use, without just compensation.' This prohibition applies to the states as well as the federal government. *Chicago, Burlington & Quincy RR. Co. v. Chicago* (1897), 166 U.S. 226, 239, 241, 17 S.Ct. 581, 41 L.Ed. 979; *Webb's Fabulous Pharmacies, Inc. v. Beckwith* (1980), 449 U.S. 155, 160, 101 S.Ct. 446, 66 L.Ed.2d 358.

6

Section 19, Article I of the Ohio Constitution also provides that private property shall not be taken for public use without just compensation. See, also, *State ex rel. Trafalgar Corp. v. Miami Cty. Bd. of Commrs.*, 104 Ohio St.3d 350, 2004-Ohio-6406, 819 N.E.2d 1040, ¶ 24." *Shelly Materials*, 2007-Ohio-5022, at ¶ 16.

{¶23} "The government's appropriation or physical invasion of private property requires compensation for the property owner. . . . In some instances, . . . a direct appropriation or ouster does not occur, but government regulation of private property becomes so onerous that its effect is tantamount to a condemnation, and such regulatory taking may be compensable under the Fifth Amendment. *See Pennsylvania Coal Co. v. Mahon* (1922), 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (property may be regulated to a certain extent, but 'if regulation goes too far it will be recognized as a taking')." *Shelly Materials* at ¶ 17.

{¶24} "Two types of regulatory actions will be deemed to be per se takings for Fifth Amendment purposes: first, those government actions that cause an owner to suffer a permanent physical invasion of property . . . ; and second, government regulations that completely deprive an owner of '*all* economically beneficial uses' of the property. (Emphasis sic.) *Lucas v. South Carolina Coastal Council* (1992), 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798. A *Lucas* taking is also known as a categorical, or total, taking, and in such a case, the government must pay just compensation for the total property taken except to the extent that 'background principles of nuisance and property law' independently restrict the owner's intended use of the property. Id. at 1030, 112 S.Ct. 2886, 120 L.Ed.2d 798. '"[Otherwise] . . . , regulatory takings challenges are governed by the standards set forth in *Penn Cent. Transp. Co. v. New York City*, 438 U.S.

7

104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).'" *Lingle v. Chevron U.S.A., Inc.* (2005), 544 U.S. 528, 538, 125 S.Ct. 2074, 161 L.Ed.2d 876." *Shelly Materials* at ¶ 18.

{¶25} "The default standard of *Penn Cent.* with respect to 'partial' regulatory taking demands an analysis different from the analysis for a total taking, because after the partial regulatory taking, the remaining property still has value. *Penn Cent.*, 438 U.S. at 129, 98 S.Ct. 2646, 57 L.Ed.2d 631. *Penn Cent.* recognizes an ad hoc, factual inquiry that requires the examination of the following three factors to determine whether a regulatory taking occurred in cases in which there is no physical invasion and the regulation deprives the property of less than 100 percent of its economically viable use: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action. Id. at 124, 98 S.Ct. 2646, 57 L.Ed.2d 631." *Shelly Materials* at ¶ 19.

{¶26} "'In the context of regulatory delay, the *Penn Central* inquiry is whether the delay ever became unreasonable. * * * Until regulatory delay becomes unreasonable, there is no taking.' *Byrd v. Hartsville* (2005), 365 S.C. 650, 660, 620 S.E.2d 76. Normal delays in obtaining building permits, changes in zoning ordinances, variances, and similar land-use devices are considered permissible exercises of police power; a 'rule that required compensation for every delay in the use of property would render routine government processes prohibitively expensive or encourage hasty decisionmaking.' *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency* (2002), 535 U.S. 302, 335, 122 S.Ct. 1465, 152 L.Ed.2d 517." *State ex rel. Duncan v. Middlefield*, 2008-Ohio-6200, ¶ 19.

8

**{¶27}** "In assessing [a] claim of a taking based on an unreasonable delay by the [government] in issuing zoning . . . permits . . . , [a court] must weigh all relevant factors under the *Penn Cent.* test, one of which is the length of any delay. Id., 535 U.S. at 335-338, 122 S.Ct. 1465, 152 L.Ed.2d 517; see generally *Hanford v. United States* (2004), 63 Fed.Cl. 111, 121 ('a 147-day delay is insufficient as a matter of law to constitute a temporary taking'); *Appolo Fuels, Inc. v. United States* (Fed.Cir.2004), 381 F.3d 1338, 1351 ('Delay in the regulatory process cannot give rise to takings liability unless the delay is extraordinary'). Other factors include bad faith by the governmental entity and whether the delay was attributable to the landowner. See *Wild Rice River Estates, Inc. v. Fargo*, 2005 ND 193, 705 N.W.2d 850, ¶ 26 ('An extraordinary delay in governmental decisionmaking coupled with bad faith on the part of the governmental body may result in a compensable taking of property'); *Wyatt v. United States* (Fed.Cir.2001), 271 F.3d 1090, 1098 ('we must recognize that delay in the permitting process may be attributable to the applicant as well as the government')." *Duncan* at ¶ 20.

## Standing

**{¶28}** As stated, the trial court determined that Sahbra "does not possess a cognizable property interest" and "therefore does not have standing to bring a takings claim." "A party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action." *State ex rel. Dallman v. Court of Common Pleas, Franklin Cty.*, 35 Ohio St.2d 176 (1973), syllabus. "Because standing to sue is required to invoke the jurisdiction of the common pleas court, 'standing is to be determined as of the commencement of suit.'"

Case No. 2023-P-0062

*Federal Home Loan Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶ 24 quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570-571, fn. 5 (1991).

{¶29} However, "courts must not 'conflate[] the merits of [the plaintiff's] takings claim with [its] standing to bring it.'" *Barber v. Charter Twp.*, 31 F.4th 382, 390 (6th Cir. 2021), quoting *CHKRS, LLC v. Dublin*, 984 F.3d 483, 489 (6th Cir. 2021). "[J]ust because a plaintiff's claim might fail on the *merits* does not deprive the plaintiff of *standing* to assert it." (Emphasis in original.) *CHKRS* at 489. "'If that were the test, every losing claim would be dismissed for want of standing.'" *Id.*, quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092 (10th Cir. 2006).

{¶30} The trial court's determination incorrectly conflated the merits of Sahbra's takings claim with its standing to bring it. The trial court's error could be deemed harmless if the court correctly determined Sahbra does not have a constitutionally protected property interest. *See* Civ.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"). As explained below, however, the trial court failed to identify and apply the Supreme Court of Ohio's governing precedent involving mineral leases.

## Property Interest

{¶31} To make a successful takings claim, Sahbra had to first establish a constitutionally protected property interest. *State ex rel. Gilbert v. Cincinnati*, 2010-Ohio-1473, ¶ 19. "'The term "property" as used in the Taking Clause includes the entire "group of rights inhering in the citizen's [ownership]." *United States v. General Motors Corp.*, 323 U.S. 373 [378, 65 S.Ct. 357, 89 L.Ed. 311] (1945). It is not used in the "vulgar and untechnical sense of the physical thing with respect to which the citizen exercises rights

10

recognized by law. [Instead, it] denote[s] the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it. * * * The constitutional provision is addressed to every sort of interest the citizen may possess." *Id.*, at 377-378 [65 S.Ct. 357, 89 L.Ed. 311].' (Ellipsis sic.) *PruneYard Shopping Ctr. v. Robins* (1980), 447 U.S. 74, 82, 100 S.Ct. 2035, 64 L.Ed.2d 741, fn. 6." *McNamara v. Rittman*, 2005-Ohio-6433, ¶ 25.

{¶32} "''A common idiom describes property as a 'bundle of sticks'—a collection of individual rights which, in certain combinations, constitute property.''' *Dispatch Printing Co. v. Recovery Ltd. Partnership*, 2015-Ohio-381, 28 N.E.3d 562, ¶ 51 (10th Dist.), quoting *United States v. Craft*, 535 U.S. 274, 278, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002). State law determines which sticks are in a person's bundle. *Craft* at 278, 122 S.Ct. 1414." *State ex rel. New Wen, Inc. v. Marchbanks*, 2020-Ohio-63, ¶ 24.

{¶33} This appeal involves a determination of Sahbra's property interests in light of its mineral lease with Shelly. The Supreme Court of Ohio held over 100 years ago:

{¶34} "[T]here may be a complete severance of the ownership of the surface of land from the ownership of the different strata of mineral which may underlie the surface; and that the creation of a separate interest in the mineral with the right to remove the same, whether by deed, grant, lease, reservation or exception, unless expressly restricted, confers upon the owner of the mineral a fee simple estate, which is of course determinable upon exhaustion of the mine." *Moore v. Indian Camp Coal Co.*, 75 Ohio St. 493, 499 (1907).

{¶35} More recently, in *Browne v. Artex Oil Co.*, 2019-Ohio-4809, the court elaborated as follows:

11

{¶36} "Ohio, like a majority of states, recognizes that minerals underlying the surface of real property are part of the realty but may be severed from the surface estate for purposes of separate ownership. *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 21-22. . . .

{¶37} "The owner of a mineral estate, whether or not also the owner of the surface estate, may convey the rights to the subsurface minerals through an oil and gas lease. *[Id.]* at ¶ 24. The oil and gas lease provides a mechanism by which an owner of a mineral estate can permit others to explore and exploit the land's mineral resources in exchange for royalties and other consideration. *Id.* at ¶ 17.

{¶38} "Although oil and gas leases '"straddle the line between property and contract,"' *id.* at ¶ 41, quoting Keeling & Gillespie, *The First Marketable Product Doctrine: Just What is the "Product"?*, 37 St. Mary's L.J. 1, 6 (2005), Ohio is in line with the general consensus among the states that an oil and gas lease creates a real-property interest, *id.* at ¶ 42-43, 49; *see also* R.C. 5301.09, 2014 Sub.H.B. No. 9 (effective Mar. 23, 2015) (recognizing that oil and gas leases 'create an interest in real estate').

{¶39} "In describing the property interest created by an oil and gas lease, . . . the lease affects the possession and custody of both the mineral and surface estates. *Buell* at ¶ 60. During the term of the lease, 'the lessor effectively relinquishes his or her ownership interest in the oil and gas underlying the property in favor of the lessee's exclusive right to those resources.' *Id.* at ¶ 62. The lessee also enjoys reasonable use of the surface estate to accomplish the purposes of the lease. *Id.* at ¶ 60. Based on the vested nature of the grant, 'the oil and gas lease has been construed as transferring to the lessee a fee simple determinable in the mineral estate with a reversionary interest

12

retained by the lessor that can be triggered by events or conditions specified in the lease.' *Id.* at ¶ 61, citing *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129-130, 48 N.E. 502 (1897).

{¶40} "[T]he term of an oil and gas lease is typically defined by a habendum clause that sets out a primary fixed term, followed by a secondary term that extends the lessee's rights under the lease on satisfaction of certain described conditions, such as production of oil and gas in paying quantities. *Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, at ¶ 77. If the conditions of the secondary term are not met, the lease terminates by its express terms and by operation of law and the mineral estate revests in the lessor. *Id*. Upon expiration of the lease, the lessee loses his status as lessee by virtue of the terms of the agreement. *Id.* at ¶ 73." *Browne*, 2019-Ohio-4809, at ¶ 20-24.

{¶41} "In lieu of an ownership interest, the lessor typically maintains only a royalty interest in the oil and gas as negotiated in the terms of the instrument, along with a reversionary interest . . . . Although the lessor may continue to own the mineral estate on paper, the vast and exclusive rights conveyed by the lease grant to the lessee the custody and use of the mineral estate and any oil and gas therein. Thus, during the lease, the lessor and mineral estate owner relinquishes all but an interest in the bonus, delay rental, and royalty payments provided for in the lease." *Buell* at ¶ 62. Of course, "'[t]he rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument.'" *Id.* at ¶ 53, quoting *Harris* at 129.

{¶42} Although *Browne* and *Buell* involved oil and gas leases, the same principles govern in this case. The trial court did not cite *Browne* and *Buell*, much less apply that precedent in relation to the express terms of Sahbra's and Shelly's mineral lease. Instead, the magistrate's decision relied heavily on this court's decision in *State ex rel.*

13

*AWMS Water Solutions, LLC v. Mertz*, 2022-Ohio-4571 (11th Dist.), which the Supreme Court of Ohio subsequently reversed and remanded in *State ex rel. AWMS Water Solutions, L.L.C. v. Mertz*, 2024-Ohio-200. We decline to conduct the required analysis in the first instance. Thus, we cannot say the trial court's legal error did not affect Sahbra's substantial rights. Consequently, Sahbra's assignments of error have merit, and the trial court's judgment is reversed.

{¶43} The dissent argues that "[t]he only interest that was plead[ed] and argued was Sahbra's right to payments under the lease, which were plainly contractual, contingent, and therefore not cognizable under any Takings Clause analysis in the first place." Sahbra did not limit its alleged property interests in that manner. The dissent also cites no authority for this proposition, much less authority that "plainly" establishes it. Further, some of the dissent's comments involve the separate issue of whether a taking occurred.

{¶44} Accordingly, this matter is remanded for the trial court to determine Sahbra's property interests in accordance with the Supreme Court of Ohio's precedent in *Browne* and *Buell*. Specifically, the trial court shall determine Sahbra's property interests, if any, in (1) the mineral estate (including any reversionary interest); (2) the surface estate; and (3) the payments provided for in the mineral lease (e.g., bonus, delay rental, and/or royalty). The trial court shall further determine whether Streetsboro's denial of Shelly's conditional use permit constituted a total, partial, or temporary taking of any of Sahbra's property interests in accordance with the precedent cited above.

{¶45} In the event the trial court finds a taking, it shall file a writ of mandamus ordering Streetsboro to initiate appropriation proceedings. The trial court need not

14

determine the amount of compensation Streetsboro must pay nor consider the issue of damages.

{¶46} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this opinion.


EUGENE A. LUCCI, P.J., concurs,

JOHN J. EKLUND, J., dissents with a Dissenting Opinion.

———————————


JOHN J. EKLUND, J., dissents with a Dissenting Opinion.

{¶47} I respectfully dissent.

{¶48} I would hold that the trial court's judgment in favor of respondent was correct. The trial court ruled that, by the terms of the lease, Sahbra severed the mineral rights from the surface rights and granted Shelly a fee simple estate in the mineral rights, leaving itself with no cognizable property interest relating to the denial of Shelly's conditional use permit to extract minerals.

{¶49} The majority does not take issue with the precept that without a cognizable property interest, any claim grounded in the Takings Clause fails. Rather, the majority faults the lower court for saying the absence of one means the claimant is without standing. I agree with that criticism, but it is insufficient grounds to reverse the lower court's judgment here. After all, "reviewing courts affirm and reverse judgments, not the reasons for the judgments." *Geneva v. Fende*, 2009-Ohio-6380, ¶ 33 (11th Dist.). "'It is

15

the duty of the reviewing court to affirm the judgment if it can be supported on any theory, although a different theory from that of the trial court.'" *Underwood v. Cuyahoga Community College*, 2023-Ohio-4180, ¶ 63 (11th Dist.), quoting *Newcomb v. Dredge*, 105 Ohio App. 417, 424 (2nd Dist.1957). Even where a court applies the wrong legal standard, the ultimate judgment may be affirmed if the court arrives at the correct conclusion under an appropriate conclusion under any appropriate legal standard. *Hetmanski and Hetmanski*, 2024-Ohio-1646, ¶ 70 (11th Dist.). (Although the trial court erred in finding the parol evidence rule did not apply to the prior written agreement between the parties, the trial court's ultimate judgment was correct.) The Majority essentially embraces this concept by not reversing based on the trial court's flawed labelling of the reason for its judgment but, instead, remanding the case for the lower court to consider other possible "property interests" that might support Sahbra's claims.

{¶50} The majority's reliance on *Browne v. Artex Oil Co.*, 158 Ohio St.3d 398 and *Chesapeake Expl., L.L.C. v. Buell*, 144 Ohio St.3d 490 to suggest those other property rights that might be cognizable for Takings Clause analysis is unavailing. Those cases describe the nature of mineral estates and the rights they confer as between contracting parties. But, neither case involves the Takings Clause. So, they did not adjudicate the fundamental issue here: Under what circumstances are any of those rights cognizable under the Takings Clause.

{¶51} The majority calls for analysis on remand of "Sahbra's property interest if any. . .." But, that is not the pertinent question; rather it is determining what, if any, property interest Sahbra had that was cognizable under the Takings Clause. The trial court already did that, and correctly found there were none.

16

Case No. 2023-P-0062

{¶52} The possibilities for alternative "cognizable" property interests that the majority posits need no further analysis. Sahbra's "reversionary interest" in the mineral estate was undisturbed by Streetsboro's denial of the conditional use permit. The "surface estate" also was undisturbed by Streetsboro's action. Neither of these interests was pleaded in Sahbra's complaint, argued on summary judgment or at trial, or the subject of Sahbra's expert's testimony on Sahbra's alleged injury and the amount of its damages. The only interest that was plead and argued was Sahbra's right to payments under the lease, which were plainly contractual, contingent, and therefore not cognizable under any Takings Clause analysis in the first place.

{¶53} In other words, the trial court could apply all of the principles from *Brown* and *Buell* and come to the same conclusion – that Sahbra had no cognizable property interest or, at best, none that the Respondent had disturbed, much less taken.

{¶54} Based on *State ex rel. R.T.G., Inc. v. State of Ohio*, 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, and the Ohio Supreme Court's later decision in *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.*, 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, I agree with the trial court's conclusion that Sahbra did not have a cognizable property interest relating to the denial of Shelly's conditional use permit, and its claim therefore fails.

{¶55} Having answered this threshold Takings Clause question, the trial court properly discharged its duty. Therefore, I respectfully dissent.

Case No. 2023-P-0062