[Cite as *Salyers v. Salyers*, 2025-Ohio-2739.]

# IN THE COURT OF APPEALS OF OHIO
# ELEVENTH APPELLATE DISTRICT
# TRUMBULL COUNTY

REBECCA SALYERS,

      Plaintiff-Appellee,

- vs -

DEREK SALYERS,

      Defendant-Appellant.

|

CASE NO. 2025-T-0009

Civil Appeal from the
Court of Common Pleas,
Domestic Relations Division

Trial Court No. 2023 DR 00075

---

## OPINION AND JUDGMENT ENTRY

Decided: August 4, 2025
Judgment: Affirmed

---

*Rebecca Salyers*, pro se, 3987 Hoffman Norton Road, West Farmington, OH 44491 (Plaintiff-Appellee).

*Derek Salyers*, pro se, 3930 Woodside Drive, N.W., Warren, OH 44483 (Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1}  Appellant, Derek Salyers (Derek), pro se, appeals the March 10, 2025, Judgment Entry of the Trumbull County Court of Common Pleas, Domestic Relations Division, denying his Formal Objection to the Notice of Relocation, where he objected to Appellee's, Rebecca Salyers (Rebecca), Notice of Relocation informing the trial court of her intent to move from Southington, Ohio to Leavittsburg, Ohio with the parties' minor child, T.S., DOB 05-15-2019.

{¶2} Derek has raised three assignments of error arguing that the trial court erred by denying his Formal Objection to the Notice of Relocation and because the magistrate exhibited bias and applied gender-based stereotypes against him.

{¶3} Having reviewed the record and the applicable caselaw, we find Derek's assignments of error to be without merit. Derek failed to object to the Magistrate's Decision and has waived all but plain error on appeal. Derek presented no evidence to suggest that the trial court should not have denied his Formal Objection to the Notice of Relocation and prevented Rebecca's relocation. To the extent that Derek's objection asserted any request for modification of the parties' Modified Shared Parenting Plan, the trial court did not have jurisdiction to address that issue because the trial court's allocation of parental rights was on appeal before this Court. Finally, the magistrate did not exhibit bias.

{¶4} Therefore, we affirm the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division.

## Substantive and Procedural History

{¶5} Rebecca and Derek were married on May 26, 2018. The parties had one child, T.S., DOB 05-15-2019.

{¶6} On March 24, 2023, Rebecca filed a "Complaint for Divorce (With Children)." Derek filed an Answer and Counterclaim on April 20, 2023.

{¶7} The parties resolved all outstanding issues except for the allocation of parental rights, child support, and medical support. On June 5, 2024, Derek filed a Shared Parenting Plan requesting that he be designated the residential parent and legal custodian, or, in the alternative, that his Shared Parenting Plan be adopted.

{¶8}   The matter proceeded to hearing on July 8 and 9, 2024, before the trial court. On August 16, 2024, the trial court issued a judgment entry determining that shared parenting was in the best interest of the child. The trial court determined that both parents should have shared parental rights but that it was in T.S.'s best interest to commence the fall 2024 school year at Southington Schools.

{¶9}   On October 9, 2024, the trial court issued its Final Decree of Divorce. The trial court adopted the Modified Shared Parenting Plan, which set forth that Rebecca would be the designated residential parent for school purposes.

{¶10}  Rebecca appealed the trial court's Final Decree of Divorce and Modified Shared Parenting Plan, and Derek cross-appealed. We issued our decision affirming the trial court's judgment in *Salyers v. Salyers*, 2025-Ohio-1605 (11th Dist.). Relevant to the present appeal, Derek's second cross-assignment of error in that case asserted that: "The trial court erred in designating Rebecca as the residential parent for school purposes, despite her lack of a stable living arrangement and testimony confirming her intent to relocate." *Id.* at ¶ 58.

{¶11}  In ruling on this assignment of error, we stated that Rebecca had testified that she was living with her parents in Southington, Ohio and that T.S. was attending school in the Southington School District. *Id.* at ¶ 59. Rebecca said that she intended to move out and buy her own house in either the Southington or LaBrae school districts. *Id.* Both schools were about 15 minutes away from Derek, and Derek lived in the LaBrae School District. *Id.* However, we declined to substantively rule on Derek's second-cross assignment of error because Rebecca's move was not properly before us. *Id.* at ¶ 61.

Case No. 2025-T-0009

{¶12}   On November 27, 2024, Derek, pro se, filed a preemptive Formal Objection to the Notice of Relocation. On December 6, 2024, Rebecca filed a Notice of Relocation.

{¶13}   On March 7, 2025, the magistrate t held a hearing on Derek's objection to Rebecca's relocation. At the time of the hearing, Rebecca and Derek's appeal was still pending before this Court.

{¶14}   At the hearing, Rebecca's counsel stated that she gave "90 days' notice of her intent to relocate" because she was "relocating from her parents' home to her own home" in Leavittsburg.

{¶15}   The magistrate asked Derek to explain "how this is going to affect" T.S. "from a practical standpoint . . . . [G]ive me the reason why we're even messing around with this right now . . . ." Derek acknowledged that he had wanted T.S. to go to school in LaBrae. However, he said that he needed someone to pick T.S. up from school two days a week while Derek worked out in Cleveland. He said the person who did that had a child in Southington Schools and that the change would affect his childcare and cost him additional money to change his childcare arrangements. He also said that Rebecca had not discussed moving school districts with him.

{¶16}   The magistrate asked when the change in school districts would occur, and Rebecca's counsel said no change would occur until the start of the new school year. Derek acknowledged that Rebecca should be entitled to move out of her parents' home but emphasized again that he was not included in a major decision. The magistrate said that the trial court could not stop Rebecca from moving, but said the "only question is, how would that affect the allocation of parental rights? And when I say the allocation of parental rights, I'm really referring to parenting time because under [R.C. 3109.]051 . . .

Case No. 2025-T-0009

you have not filed any motions in this court." The magistrate told Derek that there was no motion before the trial court seeking to reallocate parental rights. Instead, the only motion before the trial court related to Derek's objection to Rebecca's move.

{¶17} The magistrate said, "I don't see where this is a big deal. I really don't. . . . [R]ight now she's moving into your school district. This is what you wanted originally. You'll make adjustments to your parenting time. And that won't happen until sometime in August . . . ."

{¶18} Derek said that there were other factors that should be considered, such as T.S. going to school with his best friend. The magistrate said that a five-year-old child will make many friends over time and characterized Derek's objections to the relocation as a "power play in no uncertain terms." The magistrate also said he was "on a fine line here because I can't be changing the allocation of parental rights" while the parties' appeal was pending before this Court. The magistrate said that Rebecca's relocation would not change the allocation of parental rights and would "simply allow her to move closer" to Derek and enroll T.S. in the school district that he originally wanted him to attend. The magistrate told Derek to file a motion to reallocate parental rights if that was his desired outcome.

{¶19} Derek argued that there had been past issues where Rebecca mixed up the parenting schedule during a holiday week. The magistrate said that such issues are part of life, because "[s]tuff happens. People forget things. People – it's stuff. Think if the two of you were still together, heaven forbid. Do you think you'd be running the show when it comes to the child? Not from a legal standpoint, but from a practical standpoint." The

magistrate said that the relocation did not change the parenting time allocation and did not affect Derek.

{¶20} On March 10, 2025, the magistrate issued a Magistrate's Decision. The Magistrate's Decision stated that Rebecca intended to move from her parents' home in West Farmington, Ohio to Leavittsburg, Ohio. The Magistrate's Decision stated that the move would result in T.S. changing school districts but would bring Rebecca and T.S. "in closer proximity to [Derek] AND [T.S.] would now attend the school where [Derek] resides AND where [Derek] wanted him to attend! There appears to be no legitimate reason to NOT allow the relocation. This move will NOT affect [Derek's] parenting time."

{¶21} On the same day, the trial court issued a Judgment Entry adopting the Magistrate's Decision denying Derek's Formal Objection to Notice of Relocation and permitted Rebecca to relocate as requested. Derek did not object to the Magistrate's Decision.

{¶22} Derek timely filed a pro se appeal raising three assignments of error. Rebecca did not file an answer brief.

**Assignments of Error and Analysis**

{¶23} We address Derek's first and second assignments of error together.

{¶24} Derek's first assignment of error states: "The Trial Court abused its discretion under R.C. 3109.04 and R.C. 3109.051 by failing to evaluate and enforce the parties' Shared Parenting Plan, despite clear evidence that Defendant-Appellee made repeated unilateral decisions regarding the child's education, medical care, and school placement. The Court's refusal to assess compliance with joint decision-making

Case No. 2025-T-0009

provisions or consider modifying residential parent designation constitutes reversible error."

{¶25} Derek's second assignment of error states: "The Trial Court erred in failing to treat Appellant's formal written objection—filed with specific legal grounds and multiple requests for relief—as a de facto motion under Civ.R. 7(B). As a result, the Court denied Appellant procedural due process and meaningful judicial review of issues involving school placement, parenting time, and enforcement of shared parenting obligations."

{¶26} "[D]ecisions involving the custody of children are accorded great deference on review." *In re K.R.*, 2011-Ohio-1454, ¶ 28 (11th Dist.). "Thus, any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of discretion." *Id.* "The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). Thus, "the reviewing court . . . should be guided by the presumption that the trial court's findings were indeed correct." *Id.*

{¶27} "The highly deferential abuse-of-discretion standard is particularly appropriate in child custody cases since the trial judge is in the best position to determine the credibility of the witnesses and there 'may be much that is evident in the parties' demeanor and attitude that does not translate well to the record.'" *In re K.R.* at ¶ 30, quoting *Wyatt v. Wyatt*, 2005-Ohio-2365, ¶ 13 (11th Dist.). "In so doing, a reviewing court is not to weigh the evidence, 'but must ascertain from the record whether there is some competent evidence to sustain the findings of the trial court.'" *Id.*, quoting *Clyborn v. Clyborn*, 93 Ohio App.3d 192, 196 (3d Dist. 1994).

Case No. 2025-T-0009

{¶28} "The term 'abuse of discretion' . . . is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 2009-Ohio-2089, ¶ 30 (11th Dist.). An abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004); *State v. Raia*, 2014-Ohio-2707, ¶ 9 (11th Dist.). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] . . . By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Raia* at ¶ 9, quoting *Beechler* at ¶ 67.

{¶29} This case involves the trial court's adoption of a magistrate's decision pursuant to Civ.R. 53. Failure to assert an objection to a magistrate's decision waives the issue on appeal. *In re Marriage of Beynenson*, 2013-Ohio-341, ¶ 39 (11th Dist.); Civ.R. 53(D)(3)(b)(iv). This is true even where, as here, the trial court adopts the Magistrate's Decision before the time to object to the decision has expired. *See* Civ.R. 53(D)(3)(b); *Guardianship of Carey*, 2016-Ohio-7166, ¶ 17 (11th Dist.).

{¶30} "A party's failure to file objections to a magistrate's decision has consequences." *State ex rel. Franks v. Ohio Adult Parole Auth.*, 2020-Ohio-711, ¶ 9. "'Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law . . . , unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).'" *Id.*, quoting Civ.R. 53(D)(3)(b)(iv).

"Thus, in a civil case before a trial court, when a party fails to file objections to a magistrate's decision, that party waives the right to later assign as error on appeal the court's adoption of any of the magistrate's findings and conclusions." *Id.*

{¶31} When applying the plain error doctrine in a civil case, "reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Goldfuss v. Davidson*, 1997-Ohio-401, ¶ 24.

{¶32} In his first assignment of error, Derek argues that the trial court failed to enforce the parties' Modified Shared Parenting Plan. His second assignment of error argues that the trial court failed to properly treat his objection as a motion subject to review. We address these issues together.

{¶33} In his brief, Derek argues that he filed his Objection to Notice of Relocation "not to oppose the move itself, but to challenge the unilateral decision-making that preceded it and to request enforcement—or modification—of the Shared Parenting Plan. The Objection cited the failure to communicate regarding the school change, the disruption to after-school care, and Defendant-Appellee's ongoing refusal to engage in co-parenting, including prior instances involving medical and educational decisions."

{¶34} However, Derek did not raise any of these argued failures in a timely objection to the Magistrate's Decision. This failure waives all but plain error review of these issues on appeal.

Case No. 2025-T-0009

{¶35} The trial court held a hearing and ruled on Derek's objection to Rebecca's Notice of Relocation. Derek presented no evidence at that hearing to suggest that the trial court should not have denied his Formal Objection to the Notice of Relocation and prevented Rebecca's relocation.

{¶36} To the extent that Derek's objection asserted any request for modification of the parties' Modified Shared Parenting Plan, the trial court did not err by denying his objection and/or the prayers for relief contained therein.

{¶37} Rebecca's appeal and Derek's cross-appeal of the trial court's Final Decree of Divorce and Modified Shared Parenting Plan were still pending before this Court when the trial court ruled on Derek's Formal Objection to the Notice of Relocation. Upon appeal, a trial court is divested of jurisdiction except "over issues not inconsistent with that of the appellate court to review, affirm, modify or reverse the appealed judgment, such as collateral issues like contempt . . . ." *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97 (1978); *Lloyd v. Thornsbery*, 2021-Ohio-240, ¶ 17 (11th Dist.). "Clearly, this maxim is applicable when the trial court's ruling could potentially conflict with the disposition of the pending appeal." *In re Estate of Radcliff-Umstead*, 1994 WL 587972, *1 (11th Dist. Sept. 16, 1994).

{¶38} To the extent that Derek's prayer for relief in his objection sought changes in the allocation of parental rights, the trial court did not have the jurisdiction to grant such relief while the Modified Shared Parenting Plan was pending on appeal.

{¶39} Accordingly, Derek's first and second assignments of error are without merit.

Case No. 2025-T-0009

{¶40} Derek's third assignment of error states: "The Trial Court exhibited judicial bias and applied gender-based assumptions that undermined the neutrality required in child custody matters. The magistrate minimized Appellant's concerns, questioned his parental authority based on outdated family roles, and failed to conduct a structured best-interest analysis under R.C. 3109.04(F), despite credible testimony demonstrating Appellant's consistent and active involvement in the child's care and upbringing."

{¶41} Derek points to three issues from the hearing before the magistrate in support of his argument that the magistrate was biased against him: (1) the magistrate characterized his objection as a "power play" and the dispute as "drama"; (2) the magistrate told Derek, "that's life," in response to his objection that a change in schools would impact his child care arrangements; and (3) the magistrate suggested that Derek would not be in charge of making parental decisions if he and Rebecca were still married.

{¶42} Derek's failure to object to the magistrate's decision limits our ability to review this issue for anything but plain error. Put simply, none of the magistrate's comments during the hearing suggest improper bias against Derek. Among Derek's prayers for relief, he explicitly sought to prevent Rebecca from moving out of her parent's home and sought to prevent her from moving into the same school district as himself. Mere months before, Derek wanted T.S. to attend school in the LaBrae School District. However, Derek's contradictory prayers for relief also requested that he be deemed the residential parent for school purposes, which would have resulted in T.S. changing school districts to the very district he claimed he did not want T.S. to attend with Rebecca as the residential parent. The magistrate's characterization of such action as a "power play" did not reflect bias against Derek.

{¶43} Similarly, the magistrate's dismissal of his concerns about changes to Derek's after-school child care two days a week starting in the new school year, which was still months away, was fair. Life does involve making adjustments, and the possibility of Rebecca moving was known to Derek and the trial court even before the Final Decree of Divorce had been entered.

{¶44} Finally, Derek's assertion that the magistrate exhibited gender-based bias is a stretch. The magistrate's comment that Derek would not be "running the show" came in the context of Derek suggesting that the trial court "always defaults to the mother." The magistrate responded to that by saying that "50/50 equal time" was a "fair premise" but that life is messy and that stuff happens to interfere, including people making mistakes or forgetting schedules. The magistrate said, "[t]hink if the two of you were still together, heaven forbid. Do you think you'd be running the show when it comes to the child? Not from a legal standpoint, but from a practical standpoint." This was not a gendered statement reflecting that mothers "run the show" while fathers are passive and unengaged. Rather, it was a statement of practical reality in parenting that both parents have a role to play and neither parent has the complete ability to dictate decisions or avoid inconvenience and sacrifice.

{¶45} Accordingly, Derek's third assignment of error is without merit.

Case No. 2025-T-0009

{¶46} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.


MATT LYNCH, J.,

SCOTT LYNCH, J.,

concur.

Case No. 2025-T-0009

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, Appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.

Costs to be taxed against Appellant.

JUDGE JOHN J. EKLUND

JUDGE MATT LYNCH,
concurs

JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-T-0009