[Cite as *State ex rel. Sahbra Farms, Inc. v. Streetsboro*, 2026-Ohio-2364.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO ex rel.<br>SAHBRA FARMS, INC., | **CASE NO. 2025-P-0036** |
| Relator-Appellant, | Civil Appeal from the<br>Court of Common Pleas |
| - vs - | |
| CITY OF STREETSBORO,<br>OHIO, et al., | Trial Court No. 2020 CV 00501 |
| Respondents-Appellees. | |

## OPINION AND JUDGMENT ENTRY

Decided: June 22, 2026
Judgment: Affirmed

*Robert J. Dubyak*, Dubyak Nelson, L.L.C., 6105 Parkland Boulevard, Suite 230, Mayfield Heights, OH 44124, and *Christina C. Spallina*, Ross, Brittain & Schonberg Co., L.P.A., 6480 Rockside Woods Blvd., South, Suite 350, Cleveland, OH 44131 (For Relator-Appellant).

*Margaret G. Beck*, Brady, Coyle & Schmidt, Ltd., 4052 Holland Sylvania Road, Toledo, OH 43623, and *David L. Nott*, City of Streetsboro Law Director, 9184 State Route 43, Streetsboro, OH 44241 (For Respondents-Appellees).

SCOTT LYNCH, J.

{¶1} Relator-appellant, Sahbra Farms, Inc., appeals the judgment of the Portage County Court of Common Pleas, adopting the magistrate's decision and denying its petition for a writ of mandamus against respondents-appellees, City of Streetsboro and the Streetsboro Planning and Zoning Commission. For the following reasons, we affirm the judgment of the lower court.

**Factual History**

{¶2}   Sahbra owned an approximately 225-acre property located in Streetsboro which had been used as a horse farm.  It entered into a mineral rights lease with Shelly Materials in 2016, allowing Shelly to extract sand and gravel from the property in exchange for payments described in the lease.  At that time, the property was zoned in a rural residential district with surface mining permitted upon approval of an application for a conditional use permit.  On April 13, 2016, Shelly filed an application for such permit.  While it was pending, the Streetsboro City Council adopted an amendment to ban surface mining as a permitted conditional use, which amendment did not apply to Shelly's application.  Following a hearing, in September 2016, the Commission denied the application, finding that Shelly failed to meet the requirements for a permit under the zoning ordinance and surface mining was not consistent with the spirit of the zoning ordinance.

{¶3}   In Portage County Court of Common Pleas Case No. 2016 CV 00799, the court overruled the Commission's objections and entered judgment in favor of Shelly.  On appeal, this court reinstated the Commission's denial, holding that Shelly failed to meet the burden to demonstrate surface mining would not be detrimental to surrounding property. *Shelly Materials, Inc. v. Streetsboro Planning and Zoning Comm.*, 2017-Ohio-9342, ¶ 32-37 (11th Dist.).  The Ohio Supreme Court reversed this court's decision and remanded for resolution of the other issues raised in the appeal, holding that the court acted within its discretion to weigh the expert opinion and to determine Shelly presented clear and convincing evidence in support of its conditional use application. *Shelly Materials, Inc. v. Streetsboro Planning and Zoning Comm.*, 2019-Ohio-4499, ¶ 21-23.  On

remand to this court, the appeal was dismissed pursuant to the parties' stipulation in 2021.

**Present Litigation**

{¶4} In the present case, on July 30, 2020, Sahbra filed the petition for writ of mandamus against Streetsboro and the Streetsboro Planning and Zoning Commission. The petition contended that the denial of Shelly's zoning application to use the property for mining resulted in the property having no economically beneficial use and constituted a regulatory taking. Sahbra sought a writ of mandamus ordering Streetsboro to initiate appropriate proceedings.

{¶5} On July 27, 2022, Streetsboro filed a motion for summary judgment. The trial court issued a September 22, 2022 judgment denying the motion on the ground that there were genuine issues of material fact.

{¶6} A trial to the magistrate was held on April 5-6, 2023. The following pertinent testimony and evidence were presented:

{¶7} David Gross is the owner of Sahbra. Since 1988, his family has owned the property which has been used as a breeding and training center for racehorses as well as for boarding horses. He indicated that training operations were not "overly successful." Around 2014, Sahbra began also using the property for other purposes including leasing the buildings and some land for farming. He testified that the tax returns showed revenues in 2015-2019 but those years also had profit and loss statements in the negatives. The property was appraised at values ranging from 1.6 to 6.8 million dollars between 2006 and 2021.

{¶8} Gross indicated that, after the decisions in the *Shelly* case, in December 2020, Streetsboro and Shelly entered a settlement agreement and the conditional use

Case No. 2025-P-0036

permit was approved. Sahbra then settled with Shelly in August 2021 and mining began in October 2021, with royalty payments commencing at that time.

{¶9} Gross believed that Sahbra was deprived of 51 months of economic use of its property due to the permit proceedings. During his testimony, he referenced the affidavit of Chad Reel, Shelly's vice president and general manager, in which he averred that, had the conditional use application been approved by the city in September 2016, Shelly would have begun making payments under the mineral lease in February 2017.

{¶10} James Huber, a real estate appraiser, found that "the inability of Sahbra Farms to receive the subject property's economically beneficial use for the 51-month period from September 2016 through November 2020 . . . impacted the subject property's market value." He believed that the other uses of the property were only "marginally productive" and, in his opinion, "the mining would be essentially all of the economic use." David Tantlinger, a forensic accountant, testified that Streetsboro's denial of the conditional use permit caused Sahbra to incur losses in excess of $2.2 million, consisting of delayed lease payments; interest expenses; lost limestone sales; bankruptcy fees; and interest on its mortgage.

{¶11} Roger Sours, a real estate appraiser, testified that Sahbra had not been denied economically beneficial use of the land from September 2016 to November 2020 given the ability to use the property for a horse farm and residential development.

{¶12} Following trial, the magistrate issued a decision finding Sahbra lacked standing to challenge the denial of the permit and lacked a cognizable property interest due to the mineral lease. The trial court adopted the magistrate's decision and denied Sahbra's petition, determining that Sahbra "does not possess a cognizable property

interest, and therefore does not have standing to bring a takings claim."

{¶13} Sahbra appealed to this court in *State ex rel. Sahbra Farms, Inc. v. Streetsboro*, 2024-Ohio-2506 (11th Dist.). We held that the trial court "conflated the merits of Sahbra's takings claim with its standing to bring it" and, in determining Sahbra's property interest, failed to cite or apply Ohio Supreme Court precedent in *Browne v. Artex Oil Co.*, 2019-Ohio-4809, and *Chesapeake Exploration, L.L.C. v. Buell*, 2015-Ohio-4551. *Sahbra* at ¶ 30 and 42. We remanded for the trial court "to determine Sahbra's property interests in accordance with" these cases, ordering the trial court to "determine Sahbra's property interests, if any, in (1) the mineral estate (including any reversionary interest); (2) the surface estate; and (3) the payments provided for in the mineral lease (e.g., bonus, delay rental, and/or royalty)." *Id.* at ¶ 44. Further, we directed the court to "determine whether Streetsboro's denial of Shelly's conditional use permit constituted a total, partial, or temporary taking of any of Sahbra's property interests." *Id.*

{¶14} On remand, the parties filed post-appeal briefs. Sahbra attached to its brief an affidavit of Gross and an August 20, 2021 release and settlement agreement between Shelly and Sahbra. Streetsboro filed a motion to strike these documents as they were not part of the record prior to appeal, which was granted by magistrate's order.

{¶15} On May 5, 2025, a magistrate's decision was issued, denying the petition. It concluded that, under the lease, Sahbra granted to Shelly a "fee simple determinable in the mineral estate with a revisionary interest retained by Sahbra," retaining the "narrowly circumscribed" right to use the surface estate relating to the horse boarding business. It found that "Shelly's contractual rights under the Mineral Lease supersede those of Sahbra, rendering Shelly's possession of the Property – both practically and

Case No. 2025-P-0036

legally – nearly exclusive." It determined as a matter of law that Sahbra did not possess a cognizable property interest in relation to the conditional zoning permit. It further determined that no regulatory taking occurred since the property was not deprived of all economically beneficial use, the temporary delay in royalty payments is not a taking, and no temporary taking occurred since the zoning ordinance was not constitutionally invalid nor did it deprive the owner of all economically viable use. The court adopted the decision on May 12 and subsequently overruled Sahbra's objections.

{¶16} Sahbra timely appeals and raises the following assignments of error:

{¶17} "[1.] The Trial Court erred in failing to find that Sahbra Farms possesses a cognizable property interest in the Property, and thus has standing to pursue its Takings claim."

{¶18} "[2.] The Magistrate erred in granting the City's Motion to Strike the Release & Settlement Agreement between Shelly and Sahbra Farms."

{¶19} "[3.] The Trial Court Erred in finding that Sahbra Farms did not suffer a total, partial, or temporary regulatory taking."

{¶20} Generally, "[w]hen reviewing an appeal from a trial court's adoption of a magistrate's decision, an appellate court must determine whether the trial court abused its discretion in adopting the decision." *Huntington Natl. Bank v. Betteley*, 2015-Ohio-5067, ¶ 17 (11th Dist.). "When a pure issue of law is involved in appellate review, the mere fact that the reviewing court would decide the issue differently is enough to find error . . . By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." (Citation omitted.) *Sahbra*, 2024-Ohio-2506, at ¶

Case No. 2025-P-0036

19 (11th Dist.).  In relation to proceedings conducted on remand, "[i]t is well-established law that 'an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case.'"  *McConnell v. Bare Label Productions, Inc.*, 2017-Ohio-9325, ¶ 16 (11th Dist.), citing *Nolan v. Nolan,* 11 Ohio St.3d 1 (1984), syllabus.

{¶21} "Mandamus is the appropriate action to compel public authorities to commence appropriation cases when an involuntary taking of private property is alleged."  *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.*, 2007-Ohio-5022, ¶ 15.  "To be entitled to a writ of mandamus, Sahbra was required to establish, by clear and convincing evidence, (1) a clear legal right to compel Streetsboro to commence property-appropriation proceedings, (2) a clear legal duty on the part of Streetsboro to institute that action, and (3) the lack of an adequate remedy in the ordinary course of the law."  *Sahbra* at ¶ 20.

**Consideration of New Evidence on Remand**

{¶22}  We will first address Sahbra's second assignment of error relating to the admission of evidence as it is relevant to our consideration of the factual issues in subsequent assignments.  In its second assignment of error, Sahbra argues that the trial court erred by striking the release and settlement agreement between Shelly and Sahbra that was submitted on remand since it related to Sahbra's property interest and consideration of how *Browne* and *Buell* apply on remand.

{¶23}  Courts have generally reviewed the decision to admit evidence on remand for an abuse of discretion.  *Miller v. Miller*, 2024-Ohio-821, ¶ 19 (10th Dist.); *Mullaji v. Mollagee*, 2024-Ohio-6066, ¶ 16 (9th Dist.).  However, Streetsboro contends this issue was waived because Sahbra did not object below.  In its reply brief, Sahbra concedes

Case No. 2025-P-0036

that it did not do so but argues that a plain error standard requires reversal.

{¶24} Civ.R. 53(D)(2)(a) and (b) provide that "a magistrate may enter orders without judicial approval if necessary to regulate the proceedings and if not dispositive of a claim or defense" and that "[a]ny party may file a motion with the court to set aside a magistrate's order" within ten days. This court has held that failure to move to set aside the magistrate's order in the trial court waives the right to argue an abuse of discretion in relation to that order on appeal. *Blanchard v. Blanchard*, 2022-Ohio-162, ¶ 8 (11th Dist.) ("[w]ife failed to move to set aside the magistrate's order within the ten-day timeframe, which forfeits her right to argue on appeal that the trial court abused its discretion in denying the continuance"); *see In re D.J.M.*, 2011-Ohio-6836, ¶ 23 (11th Dist.).

{¶25} While the foregoing cases do not address the merits of the error, it has been observed that failure to file a motion to set aside warrants examination of the issue under a plain error standard. *Marzano v. Struthers City School Dist. Bd. of Edn.*, 2017-Ohio-7768, ¶ 10 (7th Dist.) (appellant "failed to raise this issue to the trial court by filing a motion to set aside the magistrate's order, pursuant to Civ.R. 53(D)(2)(b), thus we review for plain error only"); *Tassone v. Tassone*, 2025-Ohio-4389, ¶ 7 (10th Dist.). *See also Salyers v. Salyers*, 2025-Ohio-2739, ¶ 30 (11th Dist.) (finding, in relation to magistrate's decisions, that failure to object waives all but plain error). The plain error doctrine "may be applied only in the extremely rare case involving exceptional circumstances where error . . . seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process." *Goldfuss v. Davidson*, 1997-Ohio-401, syllabus.

{¶26} We do not find error by the lower court. In the remand order, we indicated

Case No. 2025-P-0036

that the court must "determine Sahbra's property interests in accordance with the Supreme Court of Ohio's precedent in *Browne* and *Buell*," and "shall further determine whether Streetsboro's denial of Shelly's conditional use permit constituted a total, partial, or temporary taking of any of Sahbra's property interests in accordance with the precedent cited above." *Sahbra*, 2024-Ohio-2506, at ¶ 44 (11th Dist.). We asked the trial court to conduct legal analysis which also encompassed consideration of the facts. While we do not find that our instruction precluded the trial court's acceptance of additional evidence, we also do not find that it was required to do so. In similar circumstances, courts have found no abuse of discretion in the trial court's decision to disallow additional evidence. *See Roetting v. Roetting*, 2016-Ohio-7435, ¶ 37 (12th Dist.) ("nowhere in our remand instructions did we direct the trial court to accept new evidence, consider new issues, or otherwise reopen the proceedings" and, "[a]s such, the trial court did not abuse its discretion in denying [appellant's] request for a new trial"); *Mullaji*, 2024-Ohio-6066, at ¶ 16 (9th Dist.) (the trial court did not err in choosing not to exercise its discretion to permit the introduction of new evidence on remand where nothing in the remand decision "required to court to do so"). We do not find it was plain error to strike the new evidence submitted by Sahbra.

{¶27} The second assignment of error is without merit.

{¶28} In its first assignment of error, Sahbra argues that the lower court should have considered the date the mineral lease became effective as August 20, 2021, the date Shelly and Sahbra signed a release agreement, which was dispositive of the property interest issue for demonstrating standing. Streetsboro argues that Sahbra changed its theory of the case in raising this argument, which is waived.

Case No. 2025-P-0036

{¶29} Streetsboro correctly observes that "a party ordinarily may not present an argument on appeal that it failed to raise below." *Shamrock v. Cobra Resources, LLC*, 2022-Ohio-1998, ¶ 81 (11th Dist.). In the present matter, a slightly different issue is involved in that the question before this court on appeal was raised in the trial court but for the first time on remand. It has also been held that "[a] litigant cannot raise on remand issues that could have been pursued in the first appeal." *State ex rel. AWMS Water Solutions, L.L.C. v. Mertz*, 2024-Ohio-200, ¶ 27, citing *Hubbard ex rel. Creed v. Sauline*, 1996-Ohio-174, ¶ 13-14. This conclusion is based in part on *Hubbard*'s analysis that consideration of new issues on remand violates the law of the case doctrine, which "provides that the decision of a reviewing court . . . remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan,* 11 Ohio St.3d at 3.

{¶30} This court declined to discuss the legal issue relating to property interest on appeal and returned this matter to the trial court to examine that issue. It has been held that it is not a violation of the law of the case doctrine for the trial court to expand the scope of review on remand if the appellate court did not address the merits of the trial court's decision and found only that the trial court failed to provide sufficient rationale in support of its decision. *Marquez v. Jackson*, 2018-Ohio-346, ¶ 15-16 (9th Dist.).

{¶31} Further, in determining whether an issue of law can be raised that was not argued below, the Ohio Supreme Court has considered whether it "is implicit in another issue that was argued and is presented by an appeal," finding that the appellate court "may consider and resolve that implicit issue." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 1993-Ohio-119, ¶ 20. "[O]nce a 'claim is properly

presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.'" (Citation omitted.) *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 2020-Ohio-1056, ¶ 21.

{¶32} Sahbra initially argued, in its opposition to summary judgment, that it had a property interest because it "owns the Property at issue and has rights under the Mineral Lease to compensation based on the quantity of materials mined at the Property." It first raised the argument that the property interest was based on the fact that the lease was not yet valid only upon remand. These arguments are somewhat disparate although they both relate to the underlying property interest issue. Given the broad scope on remand to determine the legal issues, with this court "declin[ing] to conduct the required analysis [of the legal issue relating to whether Sahbra had a property interest] in the first instance," *Sahbra*, 2024-Ohio-2506, at ¶ 42 (11th Dist.), we will consider Sahbra's argument regarding the effective date and whether the lease was effective during the time period in question, i.e., while the conditional use permit issue was being litigated.

**Property Interests Under Mineral Leases**

{¶33} We first briefly review property interests as they relate to oil and gas/mineral leases. "Ohio, like a majority of states, recognizes that minerals underlying the surface of real property are part of the realty but may be severed from the surface estate for purposes of separate ownership." *Browne*, 2019-Ohio-4809, at ¶ 20; *Moore v. Indian Camp Coal Co.*, 75 Ohio St. 493, 499 (1907) ("there may be a complete severance of the ownership of the surface of land from the ownership of the different strata of mineral which may underlie the surface; and . . . the creation of a separate interest in the mineral with the right to remove the same, whether by deed, grant, lease, reservation or exception,

unless expressly restricted, confers upon the owner of the mineral a fee simple estate, which is, of course, determinable upon exhaustion of the mine"). The owner of a mineral estate may convey the rights through a lease, allowing "others to explore and exploit the land's mineral resources in exchange for royalties and other consideration." *Browne* at ¶ 21. Such leases create a real property interest. *Browne* at ¶ 22; *Sahbra* at ¶ 38.

{¶34} In *Buell*, the Ohio Supreme Court further outlined the property rights relating to mineral estates, evaluating such rights in a case where the lessee had "sweeping rights and privileges to the mineral estate," including exclusive rights to explore and develop production and conduct testing, drilling, and operation of the wells, and construct on the land to utilize these resources, and the lease restricted the surface estate in the areas where the wells existed. 2015-Ohio-4551, at ¶ 55-57. The court held that the lessee's vested right to the possession of land and reasonable use of the surface estate to accomplish the purposes of the lease affects the possession and custody of both the mineral and surface estates. *Id.* at ¶ 60. Based on the vested nature of the grant, "'the oil and gas lease has been construed as transferring to the lessee a fee simple determinable in the mineral estate with a reversionary interest retained by the lessor that can be triggered by events or conditions specified in the lease.'" *Id.* at ¶ 61, citing *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129-130 (1897). "Although the lessor may continue to own the mineral estate on paper, the vast and exclusive rights conveyed by the lease grant to the lessee the custody and use of the mineral estate and any oil and gas therein. Thus, during the lease, the lessor and mineral estate owner relinquishes all but an interest in the bonus, delay rental, and royalty payments provided for in the lease." *Id.* at ¶ 62. In *Browne*, the Ohio Supreme Court restated the principles from *Buell*, and

Case No. 2025-P-0036

emphasized that its "analysis in *Buell* is supported by persuasive authority, and this court's discussion of the nature of oil and gas leases under Ohio law flows from long-standing precedent of this court." *Id.* at ¶ 27.

{¶35} On remand, this court ordered the lower court to consider the property interests, taking into account *Buell* and *Browne*. The trial court determined that, like in *Buell*, Sahbra had a fee simple determinable with a reversionary interest in the surface estate. It considered the narrow rights retained by Sahbra, confined only to horse boarding in areas not presently being mined by Shelly. Sahbra raises several issues with this analysis.

**Effective Date of the Lease**

{¶36} First, as noted above, Sahbra primarily argues that Sahbra and Shelly "came to terms on August 20, 2021, when they entered into a Release & Settlement Agreement, which waived all remaining contingencies in the Mineral Lease." As such, Sahbra "was the only party with any property interest in the mineral estate" until that date, the effective date of the lease. It based this argument upon multiple provisions in the mineral lease.

{¶37} First, the 2015 mineral lease contained a provision stating it was contingent upon "Shelly being able to obtain appropriate zoning and all necessary approvals and permits." Additionally, section 6, titled "Effective Date of Lease" stated that the effective date was the date Shelly provided notice that it is "satisfied with due diligence and that Shelly's contingencies are either satisfied or waived." Section 8 reiterated these principles relating to the effective date. The lease stated that the initial term commenced on the effective date of the lease and ended after 40 years. Further, the July 2017 third

amendment to the mineral lease states that the effective date of the lease shall be, inter alia, "the date that the Conditional Use Permit is legally effective and not subject to any appeal . . . and all other remaining contingencies have either been satisfied to Shelly's sole satisfaction or waived in Shelly's sole discretion" which Sahbra contends did not occur until the release in 2021.

{¶38} Upon reviewing the lease and amendments in their entirety, we do not find that Sahbra retained its sole property interest in the mineral estate until 2021. While it is accurate that the lease and amended lease stated that waiver of the contingencies and approval of the conditional use permit were required for the lease to be "effective," there are several other facts that indicate the property interest to the mineral estate transferred to Shelly before the "effective date." Significantly, on April 12, 2016, the parties entered a first amendment to the mineral lease which replaced sections 6 and 8 of the lease. It added a "leasehold vesting date" of June 25, 2015. It included a provision, section 10, discussing contingencies and stating that, if a contingency is unable to be satisfied, Shelly shall provide notice "of its election to either waive the contingency and move forward with the Lease, or terminate the Lease." It further amended the lease to require that Shelly, rather than Sahbra, secure the conditional use permit. The second and third amended leases then included a provision to be added to section 10, stating the effective date outlined above, i.e., when the conditional use permit was no longer subject to appeal.

{¶39} It appears that the provision discussing the date the leasehold vested in 2015 indicated that Shelly obtained its interest in the mineral estate at that time. Significantly, concurrent with that provision in the first amendment, Shelly was given the sole authority to seek the conditional use permit, a necessity to utilize the mineral estate

pursuant to Streetsboro's zoning ordinances. At that time, Sahbra would have no ability to mine the property as a conditional use permit was required to do so.

{¶40} We do not find that the effective date renders the leasehold vesting date invalid. The leasehold vesting date replaced the effective date in the first amendment and, when the effective date was returned to the lease in the second amendment, it did not supplant the leasehold vesting date but was merely added to that section. Further, the vesting date is more specific as to the property interest since it discusses when the leasehold vests, i.e., confers ownership or gives an entity an immediate right to enjoyment of the property. *Black's Law Dictionary* (12th Ed. 2024). As argued by Shelly, given the various amendments to the lease and the actions of the parties, it appears the effective date is tied to items such as the royalty payments rather than the ownership interest.

{¶41} Further, we observe that, in the summary judgment proceedings prior to the initial appeal, Sahbra argued that it had "entered into the mineral lease on or about June 25, 201[5]" and, after signing this lease, "Sahbra was limited to . . . uses of the property" including utilizing those portions of the property not being mined and to maintain operation of certain horse pastures and paddocks. Contrary to arguing that it retained the entire property until 2021, it argued that it had limited use of the property under the lease.

**Cognizable Property Interests**

{¶42} Sahbra argues that the lower court should have found it had a cognizable property interest giving rise to standing for additional reasons. First, Sahbra emphasizes that it retains surface rights to the property, giving it a property interest. While Sahbra retains surface rights to utilize the property for specific purposes relating to the horse farm, Sahbra's complaint related to the government's alleged taking of the mineral rights

Case No. 2025-P-0036

by disallowing the conditional use permit. Regardless of whether Sahbra has a property interest through the surface estate, this does not give rise to a claim that it was denied use of the mineral rights.

{¶43} Next, Sahbra emphasizes its reversionary interest. Again, while it is accurate that it has such an interest, with the valid leasehold on the mineral estate being held by Shelly, that reversionary interest is not implicated nor was it impacted by Streetsboro's denial of the conditional use permit. Even presuming this is a cognizable property interest, it would not justify recovery on a taking because the interest in the mineral estate has not reverted to Sahbra and the "delay" from the litigation over the permit has ended.

{¶44} Finally, Sahbra contends that it had a property interest from its unaccrued royalty interest, citing *Peppertree Farms, L.L.C. v. Thonen*, 2022-Ohio-395. For the reasons cited above, although Sahbra did not previously cite *Peppertree*, we will address it here. In *Peppertree*, a grantor deeded a property to the grantee but retained an interest in oil and gas rights to the property. Therein, the court noted that "there is a recognized difference between royalties that have accrued, which are personal property, and the right to unaccrued royalties, which is real property." *Id.* at ¶ 26. It concluded that an unaccrued royalty has been classified as real property because the right to receive a royalty in the future "is one of the separately alienable incidents of ownership of the full mineral interest. . . . [E]ven before an oil and gas lease has been executed describing the payments to be made under the lease and describing other rights of the lessor, it is recognized that the owner of a full mineral interest has distinct incidents of ownership with respect to future leases, and that he may alienate such incidents or property rights in whole or in part."

Case No. 2025-P-0036

(Citations omitted.) *Id.* at ¶ 27.

{¶45} The lower court found *Peppertree* to be distinguishable in that it dealt with a conveyance of a property and retention of the right to unaccrued royalties in contrast with the present matter where the mineral estate was conveyed and the lease provided the right to royalties. Streetsboro opposes this argument for the same reasons. We disagree with the trial court's analysis on this issue. Nonetheless, we find it to be harmless in light of our disposition of the third assignment of error.

{¶46} The distinction between a conveyance and a lease is one without difference. In either case, the original owner of the real property retains the right to unaccrued royalties. Just as the owner in *Peppertree*, Sahbra retained a right to receive a royalty at a later time. "A royalty is 'unaccrued' when it is "to be paid from future production."'" *Sehlstrom v. Sehlstrom*, 925 N.W.2d 233, 238 (Minn. 2019), citing Anderson et al., *Oil & Gas Law & Taxation*, § 1.5(B) (2017); *Kemp v. Rice Drilling D, LLC*, 2023-Ohio-4732, ¶ 32 (7th Dist.) (unaccrued royalty interests are "royalties that might come from future production"). *See Black's Law Dictionary* (12th ed. 2024) (unaccrued is defined as "[n]ot due"). Sahbra, at the time it filed this action and throughout the course of the proceedings, had an unaccrued royalty from production that was to take place in the future. Further, *Peppertree* does not specify that its analysis applies only in the case of a conveyance rather than a lease. As such, we hold that the trial court erred in finding that there was not a real property interest under *Peppertree* from the unaccrued royalty. Nonetheless, as will be addressed in the subsequent assignment of error, while there was a property interest allowing Sahbra to raise the taking issue, the lower court's disposition was correct since there were no grounds to find a taking. This warranted its denial of the petition for

a writ of mandamus. "[R]eviewing courts affirm and reverse judgments, not the reasons for the judgments." (Citation omitted.) *Fisher v. United Ohio Ins. Co.*, 2025-Ohio-812, ¶ 29 (11th Dist.).

{¶47} The first assignment of error is with merit, to the extent discussed above.

**Regulatory Takings**

{¶48} In its third assignment of error, Sahbra argues that the trial court erred in finding it did not suffer a taking. It argues that the action of disallowing Sahbra to use its property for mining constituted a total, partial, and temporary regulatory taking.

{¶49} The "Just Compensation Clause" of the Fifth Amendment provides: "nor shall private property be taken for public use, without just compensation." Such prohibition applies to the states and the federal government. *Chicago, Burlington & Quincy RR. Co. v. Chicago*, 166 U.S. 226, 239, 241 (1897); *Sahbra*, 2024-Ohio-2506, at ¶ 22 (11th Dist.). "Section 19, Article I of the Ohio Constitution also provides that private property shall not be taken for public use without just compensation." *Clark*, 2007-Ohio-5022, at ¶ 16.

{¶50} There are several categories of regulatory takings. First, a total taking is one that "completely deprive[s] an owner of "*all* economically beneficial uses" of the property." *Clark* at ¶ 18, citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992).

{¶51} Second, in a partial regulatory taking, "the remaining property still has value" and the court conducts a factual inquiry, examining the following factors to determine whether there has been a taking: "(1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-

Case No. 2025-P-0036

backed expectations, and (3) the character of the governmental action." *Clark* at ¶ 19, citing *Penn Cent. Transp. Co v. New York*, 438 U.S. 104, 124 (1978).

{¶52} Finally, a temporary taking occurs when the taking is not permanent but lasts for some period of time. Ohio courts of appeal have reviewed temporary takings by applying the applicable standard for total or partial takings. Where it is argued that an action temporarily denied an owner of "all economically beneficial use," this is "a *Lucas* type categorical taking" and the court "need not determine whether there was a temporary, partial regulatory taking . . . under the *Penn Central* analysis." *State ex rel. Greenacres Found. v. Cincinnati*, 2015-Ohio-5479, ¶ 38 (1st Dist.). In reviewing claims relating to a taking based on an "unreasonable delay" in issuing a zoning permit, courts are to weigh the factors under the *Penn Cent.* test, including considering the length of any delay. *State ex rel. Duncan v. Middlefield*, 2008-Ohio-6200, ¶ 20. "Normal delays in obtaining building permits, changes in zoning ordinances, variances, and similar land-use devices are considered permissible exercises of police power; a 'rule that required compensation for every delay in the use of property would render routine government processes prohibitively expensive or encourage hasty decisionmaking.'" *Sahbra*, 2024-Ohio-2506, at ¶ 26 (11th Dist.), citing *Duncan* at ¶ 19; *Appolo Fuels, Inc. v. United States*, 381 F.3d 1338, 1351 (Fed.Cir. 2004) ("[d]elay in the regulatory process cannot give rise to takings liability unless the delay is extraordinary"). Courts also consider whether there was bad faith in the governmental delay and whether delay can be attributed to the landowner. *Sahbra* at ¶ 27.

{¶53} On remand, we ordered that the lower court determine whether a taking occurred. It concluded that the factors for each of the takings were not satisfied. Sahbra

Case No. 2025-P-0036

argues that mining was the only economically beneficial or viable use of the land, citing testimony from Tantlinger that Sahbra Farms was not profitable under other uses apart from mining and that it operated at a net loss. Huber also testified that Sahbra was deprived of the only economically beneficial use of its property. Sahbra contends that the lower court failed to recognize that the property was not profitable.

{¶54} First, we find no error in a determination that there was not a total taking. In *Clark*, the Ohio Supreme Court addressed the issue of whether the denial of a conditional-use permit constituted a taking and held that since there were other potential uses for the property, the appellant was not denied all economically beneficial use. *Clark*, 2007-Ohio-5022, at ¶ 39. Similarly, here there was testimony that there were other economically beneficial uses, including renting buildings on the property, running the horse farm, and renting the land for farming. While there was conflicting evidence regarding the extent to which Sahbra ran a profitable business, it does not follow that this means the land cannot be used for these purposes in an economically beneficial way. Sours, a real estate appraiser, testified that Sahbra had not been denied economically beneficial use of the land from September 2016 to November 2020 given the ability to use the property for a horse farm and for residential development. We find no error in the lower court accepting that testimony.

{¶55} Next, in reviewing the partial taking, we observe that the Supreme Court of Ohio recently decided *State ex rel. AWMS Water Solutions, L.L.C. v. Mertz*, 2026-Ohio-1487 (*AWMS III*), which includes a thorough discussion of the partial-regulatory-takings doctrine in Ohio. As to the second *Penn Central* factor—interference with distinct investment-backed expectations—the Supreme Court reaffirmed the three-subfactor

Case No. 2025-P-0036

inquiry adopted from *Appolo*, 381 F.3d 1338 (Fed.Cir. 2004): "(1) whether the plaintiff operated in a 'highly regulated industry;' (2) whether the plaintiff was aware of the problem that spawned the regulation at the time it purchased the allegedly taken property; and (3) whether the plaintiff could have 'reasonably anticipated' the possibility of such regulation in light of the 'regulatory environment' at the time of purchase." *AWMS III* at ¶ 43, quoting *Appolo Fuels* at 1349.

{¶56} We find that the factors under *Penn Central*, as reiterated by *AWMS III*, support the trial court's holding that there was not a partial taking. As to the first factor, the lower court considered that the economic impact on Sahbra related only to the delay in receiving royalty payments and that Sahbra would still be able to receive its royalty payments although they had been delayed. As *AWMS III* reiterated, "[w]hether a compensable taking has occurred is a question of law based on factual underpinnings." *Id.* at ¶ 62, citing *Maritrans Inc. v. United States*, 342 F.3d 1344, 1350 (Fed.Cir. 2003). The legal conclusion is reviewed de novo; the underlying factual findings receive deference if supported by competent, credible evidence. *Id.* at ¶ 36. The trial court's factual findings are entitled to deference under that standard. While there was some testimony as to costs associated with the time that passed while the matter was pending before the courts, it is equally clear that Sahbra will still be able to receive royalty payments for the same number of years under the lease, with a possibility that the payments will increase as there was testimony that the cost of minerals generally increases over time.

{¶57} As to the second factor, interference with distinct investment-backed expectations, each subfactor outlined above cuts against Sahbra. Surface mining is, in

any view, a highly regulated industry. The property was zoned R-R Rural Residential, with surface mining permitted only as a *conditional* use—that is, never as of right. Sahbra was therefore on notice at the time of the 2015 lease that any mining operation depended upon the issuance of a discretionary permit. *See, e.g., Kafka v. Montana Dept. of Fish, Wildlife & Parks,* 348 Mont. 80, 96 (2008), citing *United States v. Fuller*, 409 U.S. 488 (1973) ("[c]ourts which have directly considered the question . . . have taken a dim view of the notion that government-issued licenses [or permits] are compensable property interests"). *See also Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1374 (Fed.Cir. 2004) (previously issued fishing permits were revoked, but the court found no compensable property interest). Finally, Sahbra could have "reasonably anticipated" regulations in light of the scheme in place at the time it obtained its interest. The first amendment to the lease, executed in April 2016, expressly addressed contingencies and assigned to Shelly the responsibility for securing the conditional use permit. The risk that a conditional use permit would be denied, and that the denial would be litigated, was foreseeable and allocated by contract. In the language of *AWMS III*, Sahbra's expectations were "fundamentally tempered by its express awareness of the serious risks" attending the regulatory regime under which it elected to operate. *Id.* at ¶ 45 and ¶ 51.

{¶58} Regarding the final factor relating to the character of the governmental action, *AWMS III* directs the court to "consider the purpose and importance of the public interest reflected in the regulatory imposition," noting that "[t]here is little doubt that it is appropriate to consider the harm-preventing purpose of a regulation in the context of the character prong of a *Penn Central* analysis." *AWMS III* at ¶ 58 (Citations and quotation

marks omitted). Streetsboro's denial of the conditional use permit was a paradigmatic exercise of the municipal zoning power, predicated on the Commission's stated concern that surface mining was inconsistent with the spirit of the zoning ordinance and might adversely affect surrounding residential property. That the Commission's evidentiary judgment was ultimately rejected in *Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.*, 2019-Ohio-4499, does not transform the character of the action; the police power encompasses regulatory decisions that turn out to be erroneous as well as those that prove correct. There was no finding that the Commission acted in bad faith and it provided a rational, albeit ultimately incorrect, justification that Shelly failed to meet several of the requirements for a permit. In sum, all three factors weigh against Sahbra's partial takings claim.

{¶59} As to the temporary taking, we reiterate those factors outlined above. There was no bad faith nor was there an unreasonable or extraordinary delay by Streetsboro or the Commission. The permit request was timely addressed and they certainly had the right to litigate the issues on appeal, with both Shelly and Streetsboro filing appeals to address the permit issue.

{¶60} The third assignment of error is without merit.

{¶61} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed. Costs to be taxed against appellant.

JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2025-P-0036

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the first assignment of error is with merit to the extent discussed in the opinion and the second and third assignments of error are without merit. The order of this court is that the judgment of the Portage County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
JUDGE SCOTT LYNCH

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-P-0036